# Mackey's Heirs *versus* Adair et al.

1. An attorney at law conducting an action of ejectment on behalf of his client has no right without the client's authority to enter into a compromise whereby a certain line is fixed upon, as the boundary between the respective tracts of the parties litigant, and deeds of release, or assurance by said parties are provided for.

2. Where an attorney in such case does enter into such an agreement of compromise, his client is not bound thereby.

November 7th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., did not sit.

Error to the Court of Common Pleas No. 2, of *Allegheny county:* Of October and November Term 1881, No. 295.

Ejectment, by Mary Adair, John Irwin, Jr., and others, heirs of John Irwin, deceased, against William Coleman, and others, heirs of Robert W. Mackey, deceased, for a tract or parcel of land situate in Allegheny city, lying between South Avenue, School street and the Allegheny river.

On the trial, before WHITE, J., the plaintiffs, having put in evidence their abstract of title, which was undisputed, except as to the division line between the plaintiffs' and the defendants' land, offered in evidence, for the purpose of establishing said boundary line, the record in an ejectment suit between J. K. Moorhead, Robert W. Mackey and others, plaintiffs, and the

[Mackey *v.* Adair.]

City of Allegheny and the heirs of John Irwin, deceased (the plaintiffs in this case), defendants, in the Court of Common Pleas No. 2, of Allegheny county to November Term 1874, No. 350, for a tract of land, known as Kilbuck Island. It thereby appeared, inter alia, that the controversy in that case, as between the plaintiffs and the heirs of John Irwin, was only one of boundary, and the defences of the Irwin heirs and the City of Allegheny were antagonistic; and further, that on the trial of said ejectment, the several counsel engaged therein, representing the said parties plaintiffs, and the heirs of Irwin defendants, entered into a compromise agreement for the settlement of said disputed boundary, as between themselves, whereupon the trial proceeded against the City of Allegheny, the principal defendant. The case resulted in a verdict and judgment for the plaintiffs for part of their claim, which judgment was affirmed on writ of error. (See Allegheny City *v.* Moorhead, 30 P. F. Smith 118.)

The defendants objected to the admission of said record, as irrelevant, and because it did not show any verdict or judgment in favor of the Irwin heirs. Objection overruled; exception.

The plaintiffs then offered the above mentioned agreement, which was as follows:

" Moorhead *et al.*  
    *versus*            Common Pleas No. 2,  
The City of Allegheny,       No. 350, November T. 1874.  
    John Irwin *et al.*

" It is agreed between the plaintiffs in this case and the heirs of John Irwin, defendants, in order to compromise the question between them, that a verdict shall be entered in favor of the said heirs of John Irwin, and against said plaintiffs, for all the land described in said writ lying east of a line commencing at a point on Bank lane, now South avenue, 136 feet eastwardly from the eastern line of Borland alley, and running thence on a line parallel with School street, to the Allegheny river.

"And in case said plaintiffs shall succeed in establishing a title to the land described in said writ, not included in the claim of said Irwin's heirs, or to any part thereof adjacent thereto, the said Irwin's heirs shall release or otherwise assure to said plaintiffs, all their interest in all land described in said writ west of said line. And said plaintiffs shall release or otherwise assure to said Irwin's heirs, all their interest in all land described in said writ east of said line. The intention of this agreement being to fix a division line between said parties, in case said plaintiffs shall establish a title to any part of the same adjoining said Irwin's claim, and in case of failure so to establish

their title, not to conclude Irwin's heirs as to their title, or the extent of their claim against any other parties.

"HAMPTON & DALZELL, Attorneys for Plaintiffs.
S. H. GEYER, Attorney for Plaintiffs.
S. SCHOYER, Attorney for Plaintiffs.
R. S. WOODS, Plaintiffs' Attorney.
DAVID W. BELL, and SLAGLE & WILEY,
Attorneys for Irwin's heirs."

Objected to, as incompetent, and "because it was not within the power of the attorney for R. W. Mackey to make such a compromise." Objection overruled; exception.

The testimony of F. M. Magee, Esq., who was of counsel for plaintiffs in said suit was, substantially, that, although he did not sign the said agreement, he assisted in drawing it and was a party to it on behalf of his clients, and he was still willing to abide by it; that he supposed, at the time of entering into the agreement (as did all the other counsel in the case), that he represented Robert W. Mackey, one of the plaintiffs in said ejectment, although Mr. Mackey, who resided in Philadelphia, was not present at the trial; but that, when he told Mr. Mackey of it after the trial, "he repudiated it, said that he hadn't any attorney in the case, that he wouldn't pay any attorneys, and wouldn't live up to the compromise—that he had his patent and was going to look out for his interest in it."

The court charged the jury as follows:

"If the compromise agreement in evidence was made during the progress of the trial of the case of Moorhead et al. v. Allegheny City et al., No. 350, November Term 1874, by the counsel representing all the plaintiffs in that action, and was authorized and sanctioned by the plaintiffs present in court conducting said action for themselves and the other plaintiffs, it is binding upon Mr. Mackey's heirs, although he may not have been actually present or known of the agreement at the time, and may, after the trial, have said he repudiated said agreement."

Verdict for the plaintiffs for the land claimed, up to the boundary line fixed by the said compromise agreement, and judgment thereon. The defendants thereupon took this writ of error, assigning for error the admission in evidence of the record of the said ejectment suit, and of the said compromise agreement made therein.

*Rodgers*, (*Oliver* with him) for the plaintiffs in error.—Assuming that Mr. Mackey was represented by counsel, and that his counsel was a party to the compromise agreement, can that agreement be enforced in an action of ejectment? An attorney at law is authorized to do those things only which pertain to the conducting of the suit; he has no power to com-

promise his client's cause, without the client's sanction or authority.   Stokely *v.* Robinson, 10 Casey 315 ; Housenick *v.* Miller, 8 W. N. C. 346 ; Holker *v.* Parker, 7 Cranch 452.   He has no power to make a compromise by which land is to be taken instead of money.   Huston *v.* Mitchell, 14 S. & R. 307; Stackhouse et al. *v.* O'Hara's Exrs., 2 Harris 88.   This being so, how can he agree, as in this case, that his client "shall release or otherwise assure," to any one, a portion of the land which his client employs him to recover ?   If such an agreement be good for six acres, why not for sixty, or the whole claim ?   The court erred in admitting the agreement in evidence, and in charging that Mr. Mackey was bound by it notwithstanding he never authorized it, was not present when it was made, and promptly repudiated it when he learned of its existence.

*Slagle & Wiley*, for the defendants in error.—The agreement was made during the trial, in the conduct of the suit, and under these circumstances was clearly within the scope of an attorney's power.   Wilson *v.* Young, 9 Barr 102 ; Babb *v.* Stromberg, 2 Harris 397 ; Evars *v.* Kamphaus, 9 P. F. Smith 379 ; Coxe *v.* Nichols, 2 Yeates 547.   The cases cited by the plaintiffs in error are distinguishable.   In Stokely *v.* Robinson, the attorneys were not attorneys of record ; there was no cause pending, and they acted as arbitrators without any submission. Housenick *v.* Miller was an agreement after judgment.   In Holker *v.* Parker, the agreement of counsel was set aside as being unconscionable, though it amounted to a confession of judgment, which an attorney undoubtedly has the right to make.   In Huston *v.* Mitchell, the attorney Burnside was not attorney of record, and undertook to accept land instead of money.

The agreement in fact resulted favorably for the plaintiffs in the suit in which it was made, for they thereby obtained more land than the jury awarded.   The numerous co-tenants of Mr. Mackey, plaintiffs in that suit, have never objected to the action of their counsel in making the agreement, and Mr. Mackey and his heirs, having participated in the advantage thereby gained in the former ejectment, are estopped from denying in this suit that they are bound by it.

Mr. Justice TRUNKEY delivered the opinion of the court, November 21st 1881.

R. W. Mackey and others brought ejectment against the City of Allegheny and the heirs of John Irwin, for a tract of land, the whole of which was claimed by the city, and a defined part by Irwin's heirs.   At the trial, the respective attorneys for the plaintiffs, and for the heirs of Irwin, in order to

[Mackey *v.* Adair.

compromise the question between them, agreed, that a verdict should be entered in favor of said heirs for all the land lying east of a specified line; and, if the plaintiffs should recover the land not included in said Irwin's claim, they should release to said Irwin's heirs all their interest in the land east of said line; and said heirs should release to the plaintiffs all their interest in the land west of said line. It was intended to fix a division line between the parties, in case the plaintiffs should establish title to any part of the land adjoining Irwin's claim, and in case of their failure, not to conclude Irwin's heirs, as to their title, or the extent of their claim against other parties.

The court instructed the jury, that the agreement is binding upon Mackey's heirs, although he was not present and did not know of it, at the time, and, after the trial, may have said, he repudiated it; and this ruling constitutes the alleged error.

An attorney at law has very extensive powers and may do those things which pertain to the conducting of the suit. Unless otherwise expressly instructed by his client, he may use his own judgment in selecting the form of action, and in shaping the issue, also, whether it shall be tried by a jury, by the court, or some other tribunal provided by law. On a mere question of boundary, when title is not involved, in open court, he may agree to its submission to the final determination of arbitrators: Evars *v.* Kamphaus, 9 P. F. S. 379. He may refer his client's cause to arbitrators with an agreement, that the award shall be final; but the client may revoke the submission, and, in a proper case, he may have relief by application to the court: Wilson *v.* Young, 9 Barr 101. In Pennsylvania, from an early day, arbitration has been a favorite mode of trial, and it may be implied by the relation, that the attorney has authority to make such agreements for reference; but it does not follow, that he can make compromise agreements for his client, or settle a boundary himself.

An attorney has no authority to make a compromise, by which his client shall take land instead of money: Huston *v.* Mitchell, 14 S. & R. 307. Where the attorneys of the respective parties make an agreement in the form of an award, settling an ejectment, it will not authorize judgment accordingly: Stokely *v.* Robinson, 10 Casey 315. In that case WOODWARD, J., held that counsel have no power to compromise their client's case, without the client's authority or sanction.

Here, the agreement is a compromise, and provides for deeds of release, or assurance to be made by the clients. It is doubtful, whether oral authority would enable an attorney to make such a contract respecting land, though, if the client were present at its making, or afterwards recognized and acted upon it, he would be bound. It was not in the course of the conduct

of the suit, nor could such agreement be anticipated by the client as likely to be made in any issue of fact, or of law, or in any known mode of trial. Authority to make it, cannot be inferred from the relation. No precedent has been cited in this state, or elsewhere, which sustains a compromise of this nature, by an attorney without his client's authority, or subsequent ratification; and, we are of opinion, that it would be dangerous to clothe the attorney with such power over his client's property.

Judgment reversed, and venire facias de novo awarded.