## Quest's Estate.

Argued October 12, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and STERN, JJ.

*Walter J. Wagner,* for appellants.

*Park J. Alexander,* for appellee.

OPINION BY MR. JUSTICE DREW, November 23, 1936:

William Oca Quest died June 6, 1928, leaving the residue of his real and personal estate in trust, the net income therefrom to go to his wife for life, together with such portion of the principal as the trustee in its sole discretion should consider necessary for her comfortable maintenance and support. At her death the corpus was to be divided among testator's seven children, appellants here. The Fidelity Title and Trust Company of Pittsburgh, now the Fidelity Trust Company, was nominated executor and trustee.

On March 14, 1929, the corporate executor transferred the residue of the estate to itself as trustee. Six days later, it invested a substantial proportion of the funds thus received in a "straight" mortgage taken in its own name without disclosure of the existence of a trust either upon the face of the instrument or the public records. Declarations of trust were, however, entered on the corporate ledgers. The remainder of the corpus, save for a small cash balance, was placed in an installment mortgage "pool." Testator's widow was notified by letter dated March 30, 1929, of the making of these investments, though not of the failure to publicly disclose the trusteeship.

In 1931 the mortgagor of the "straight" mortgage became bankrupt and defaulted. Interest then due the life beneficiary was advanced by the trustee from its own funds. Subsequently, the company's general counsel in-

stituted foreclosure proceedings and bought in the property on behalf of the mortgagee. The sheriff's deed ran to the company in its own name. Immediately thereafter, the trustee withdrew from the estate sums sufficient to repay it for the price paid at the foreclosure sale, for the interest advanced to the life beneficiary following default under the mortgage, and for fees of its general counsel for services rendered to the estate. Title has continued to remain in the company without public indication of trusteeship. The life beneficiary died on April 6, 1935.

Exceptions to the first and final account, providing for distribution in kind of fractional interests in the realty purchased at the foreclosure sale, were filed by the seven remaindermen and the administrator of the life beneficiary's estate. They were dismissed and the account confirmed. These appeals followed.

There can be no doubt that the trustee's conduct in taking the "straight" mortgage in its own name was wrongful. It is well-settled that "where a trustee invests trust money in property which he takes in his own name as an individual the beneficiary has the option to accept the investment or require the trustee to account for the money so invested, with interest": *Yost's Estate,* 316 Pa. 463. The action of the company in taking the sheriff's deed in its own name, there being no indication of the equitable interests of appellants, was equally a breach of trust. Nothing in *Guthrie's Estate,* 320 Pa. 530, conflicts with the rule in *Yost's Estate,* as we there specifically declared. *Dillon's Estate,* 324 Pa. 252, having the same equitable appeal as *Guthrie's Estate,* fell under the rule of that case. There are no facts here to justify the intervention of equity, and in so far as the breach of trust is concerned, this case is flatly ruled by *Yost's Estate.*

It is claimed, however, that the life beneficiary and the remaindermen, knowing that the title had been taken in the trustee's name consented to its being so carried.

This is alleged to have happened in this way: On March 7, 1932, the company's real estate officer wrote appellants' attorney, then counsel for both the trustee and beneficiaries, enclosing the sheriff's deed and asking that a new deed be drawn from the company in its individual capacity to itself as trustee. This letter was upon its face addressed to the recipient in his capacity as attorney for the trustee, and the court below so found. In reply, the deed was returned with the recommendation that title remain as it was. This suggestion was based upon conferences held with the life beneficiary and some of the remaindermen, not identified in the record. The trustee's response was, "We note what you say about the record title to the real estate, but for a matter of convenience we prefer to carry the property as it now is in the name of the Fidelity Trust Company, rather than have a deed made to the estate." This answer while seemingly inexplicable does show that the trustee itself decided to keep the property in its own name.

We now meet this problem: Can counsel for a cestui que trust effectively consent to a breach of trust so as to bar his client? Of course, if the attorney had express authority or power so to act the beneficiary would be bound by his affirmance. That, however, was not the situation here. Some of these remaindermen were not consulted at all; they were entirely ignorant of the action of the trustee. Moreover, counsel had no implied authority to bind them. We have held repeatedly that an attorney cannot, without more, compromise a client's claim. There must be proof of authority beyond that implied by the relationship if the client is to be bound by the acts of his attorney not within the scope of his ordinary duties: *Mackey's Heirs v. Adair*, 99 Pa. 143; *McLaughlin v. Monaghan*, 290 Pa. 74. These precedents are not inapposite here. Counsel had no authority, implied or otherwise, to prejudice these beneficiaries' substantial rights.

The evidence shows that the life beneficiary and some of the remaindermen did consent to retention of title in the trustee. They are now prevented from asserting this was a breach of trust. Those who did not consent are entitled to complain of the wrong. Consent of one beneficiary to a breach of trust does not prevent the others from holding the trustee liable in so far as their interests are adversely affected thereby: see Restatement, Trusts, section 216, subsection 1, comment (g). Upon the return of the record the court below should proceed to identify the beneficiaries who did not consent and to award to them in cash their shares of the corpus wrongfully invested, with simple interest. Those found to have consented are to receive their shares in the realty purchased in kind, the remainder being the property of the trustee.

Appellants assert that since the mortgage was improperly held the trustee should also be surcharged with the amount of corpus expended in (1) providing for the life beneficiary's support, and (2) in paying losses resulting from maintenance of the property. The first of these contentions is not tenable. The sole discretion vested in the company to withdraw from corpus the cost of the widow's comfortable support was not abused. In so far as the second contention is concerned the consenting beneficiaries are bound to pay the trustee their share of these expenses, and this result can be reached by the trustee taking credit for that amount. But in so far as the non-consenting beneficiaries are concerned the action of the trustee was improper, and their proportionate share of the money withdrawn from corpus for this purpose must be paid to them. The fee claimed by trustee's counsel is for general services, it is reasonable, and we will not disturb it.

The decree of the court below is reversed at the cost of the appellee and the record is remitted for further proceedings in accordance with the views herein expressed.