## Spear's Estate.

Argued April 12, 1938; reargued November 30, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Paul Lane Ives*, with him *J. Borton Weeks*, for appellants.

*John B. Hannum, Jr.*, with him *Pierce Archer, Jr.*, for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 26, 1939:

James Spear, Jr., was receiving the income from one-half of a testamentary trust created by his father. At his death this portion of the trust (except $50,000 not here in question) was to be paid to his child or children. He was survived by his daughter, Louise. Prior to his death, certain defaulted mortgages held by the trustees, or in which the estate of James Spear had a participating interest, were foreclosed, the estate acquiring some parcels of the real estate outright, and an undivided partial interest in others. Forty-one properties were purchased on foreclosure, and are still held unconverted. The trust estate also includes certain mortgages and mortgage participation certificates which are in default, but upon which there has been no foreclosure. The real

estate and mortgages were charged by the trustees as principal. Exceptions were filed by appellants, the executors of James Spear, Jr., contending that the deceased life tenant's estate was entitled to an apportionment. The court below dismissed the exceptions, and awarded the balance of one-half of the residuary trust estate to the remainderman, Louise Spear.

We held in *Nirdlinger's Est. (No. 2)*, 327 Pa. 171, under the apportionment rule, that living life tenants, entitled to income at the time of the resale of the properties, were to share in the net proceeds according to the formula adopted in section 241 of the Restatement of Trusts.

Appellants insist that the death of the life tenant prior to the resale does not affect his right to such apportionment ultimately, and that the properties here involved must be retained in trust until resold, and salvage ascertained. As authority for this, they cite comment (g) of section 241 of the Restatement,* and *Dornan's Est.*, 19 D. & C. 539. Their theory is that the interest of the life tenant in the real estate and unproductive mortgages is a vested interest, in præsenti, because these properties and mortgages are securities for the defaulted interest which the life tenant should have received; that the death of the life tenant prior to the realization upon the securities merely transfers that interest to his estate. Such a theory overlooks a most fundamental principle of apportionment and extends the doctrine of *Nirdlinger's Est. (No. 2)*, 327 Pa. 171.

There is a compelling reason for refusing apportionment in this case. In *Nirdlinger's Est. (No. 1)*, 327 Pa. 160, it was stated that practical difficulties sometimes

---

* "g. *Sale after time for distribution.* The rule stated in this Section is applicable although the property is not converted prior to the time for distribution of the trust estate." See also *Tuttle's Case*, 49 N. J. Eq. 259, 24 Atl. 1; *Matter of Pinkney*, 208 App. Div. 181, 202 N. Y. S. 818, aff'd, 238 N. Y. 602, 144 N. E. 909; *Earl of Chesterfield's Trusts*, 24 Ch. Div. (Eng.) 643.

make apportionment impossible, and that it is therefore a discretionary matter. At 170-71, the Court said: "The paramount factors to be considered are the delay attendant upon the settlement of the deceased life tenant's estate, and the time when the fund comes into the trust and the means by which it was procured . . . No inflexible rule can be laid down controlling the circumstances warranting equitable apportionment."

These considerations were recognized in *Green et al. v. Phila. Inq. Co. et al.*, 329 Pa. 169, 176. And in *Neafie's Est.*, 325 Pa. 561, it was held that successive life tenants could participate in earnings on corporate stock accumulated during the life tenancy only where the stock was liquidated during the life of the trust.

However, the practical difficulties presented in this case by the proposed apportionment, the long delay in the settlement of the life tenant's estate and in the distribution of this portion of the residuary estate that would result, render such an apportionment inequitable.

If appellants' position were sustained, the purpose of James Spear, as expressed in his will, would be frustrated. The forty-one properties now in the hands of the trustees cannot be immediately sold, and the liquidation of the investments which they represent may well extend over a long period of time in the future. In the case of the defaulted mortgages which have not yet been foreclosed, the delay would be even longer. The situation is complicated by the fact that in many of the original mortgages the estate had merely a fractional participating interest. The share of the corpus held in trust for James Spear, Jr., was one-half of this interest. In two instances, the share held for James Spear, Jr., represents one-half of $\frac{1}{100}$th of the original mortgages, and in several cases it is less than one-half of $\frac{1}{100}$th. It would be impossible at the present time to even speculate upon the gross net proceeds from these properties. To require the trustees to retain one-half of the residuary estate until each of the unproductive investments

can be salvaged would unduly extend the life of this trust after its real purpose has been accomplished. Moreover, the requested apportionment would defeat the clear intention of the testator that the life tenant was to receive the income under a spendthrift trust free of creditors' claims.

The court below correctly held that the purpose of the testator required the trust to be terminated as of the date of the death of James Spear, Jr. To hold otherwise would be to reverse the maxim, and compel remaindermen to starve so that creditors and heirs of life tenants, to whom the testator intended no benefit, should feast.

Decree affirmed.