## Myers' Trust

*Francis S. Cantrell, Jr.*, and *Jerome Bennett*, of *Wessel, Bennett & Weiss*, for exceptants.

*Humbert B. Powell*, of *Powell & Smith*, and *Francis K. Swartley*, contra.

STEARNE, J., May 5, 1939.—The settlor, about to be divorced, executed a deed of trust whereby he transferred $30,000 to a trustee (a trust company) to invest and pay his wife Estelle the income for her life. After the death of the wife the principal was to be paid to settlor; if deceased, then according to settlor's will; and should settlor leave no will, then the principal went to settlor's heirs and next of kin.

After the divorce settlor married Lilla F. Lang. Settlor died, testate, leaving his widow Lilla surviving. The widow has elected to take against the will. Estelle, the former wife, and life tenant under the deed of trust, survived, but subsequently died, testate, thus terminat-

ing the trust (except for a part thereof which has no application herein).

The executrix of the life tenant's estate claims that upon salvage operations relating to certain foreclosed mortgages, where the real estate proved unproductive, the carrying charges should be paid out of principal and not from income. She also seeks to surcharge the trustee for certain alleged illegal investments—to the extent that the estate of such life tenant is entitled to *income* therefrom.

The trustee under the will of decedent (settlor), and certain of the beneficiaries thereunder, maintain that the whole of the principal of this trust passes under the *will* of decedent, unaffected by the widow's election to take against the will.

The auditing judge, through obvious inadvertence, neglected to direct that carrying charges upon unproductive real estate derived from a salvage operation of foreclosed mortgages be charged to principal. He declined to surcharge concerning the alleged illegal investments. He also ruled that the widow, electing to take against the will, was entitled to her share of the principal of the trust under the intestate law. Exceptions have been filed relating to these three legal problems.

We are unanimously of opinion that under Nirdlinger's Estate, 331 Pa. 135, pending sale of real estate under mortgage foreclosure, the life tenant is entitled to the net rents. When such real estate is unproductive, then the carrying charges are advanced out of principal, and such advancements can be recouped when the real estate is sold. But where, as here, the life tenant dies before the real estate is sold, all questions of apportionment thereafter end, and all the proceeds of sale pass to the remaindermen: Spear's Estate, 333 Pa. 199. We are of opinion, therefore, that concerning income from real estate derived from foreclosed mortgages the life tenant's estate is entitled to all the *net* rents therefrom.

Where such real estate is unproductive, the carrying charges must be taken from principal—with each property considered as a separate unit: Nirdlinger's Estate, supra. This calculation is to extend to the date of the death of the life tenant and no further.

Considering the question of surcharge, the stipulation reveals the following facts: The trustee invested $10,000 in a first mortgage on premises on Woodland Avenue, and $4,500 in a mortgage on Powelton Avenue. When the Woodland Avenue mortgage was taken in 1926, title was taken in the trustee's name and was so recorded upon the public records. The trustee immediately executed a written declaration of trust and made an entry thereof upon its books and files, and the mortgage papers were duly earmarked. The life tenant was fully acquainted with the investment and consented to a reduction in interest. In 1933, the mortgage, with 183 others, was assigned to the trustee as "trustee for various trusts". The mortgage was foreclosed in 1935 and the sheriff's deed conveyed title to the real estate to the trustee as "trustee for various trusts". The real estate has not been sold and forms part of the trust assets.

The Powelton Avenue mortgage was taken in 1926 and held in the same manner as the Woodland Avenue mortgage. In 1933, the mortgage was assigned to the trustee as "trustee for various trusts" and duly recorded. In 1937, the mortgage was assigned to the trustee as "trustee under [deed of trust herein involved]". The mortgage was foreclosed and title to the real estate was obtained as above. The real estate has not been sold and forms part of the trust assets.

It is stipulated that neither the life tenant nor any of the trust beneficiaries was advised or knew of the manner in which the mortgage or assignments appeared in the public records, or the declaration of trust, or the entries on the trustee's books and records. The auditing judge has found as a fact that the income from the mort-

gages in question was placed on the statements submitted to the life tenant; that the trustee has acted with the utmost of good faith, and that there appears no intentional fraud or wrongdoing on its part; also that no loss was occasioned by the fact that ownership of the mortgages did not appear upon the public records.

Exceptant relies solely upon the fact that the trustee held title in its own name and for a period did not disclose its trusteeship. Counsel for exceptant points to Yost's Estate, 316 Pa. 463, and Quest's Estate, 324 Pa. 230, which hold that such action is a breach of trust and warrants a surcharge. However, a court of equity may, in its discretion, refrain from inflicting penalties which it considers unjust under the circumstances of the case: Guthrie's Estate, 320 Pa. 530; Dillon's Estate, 324 Pa. 252; Harton's Estate, 331 Pa. 507.

Certainly the trustee acted with the utmost of good faith; the mortgages were duly earmarked on the trustee's books and records; all parties had notice of the ownership of the mortgages, although perhaps not of the title situation; the trustee followed a widely-established custom, now decreed improper, but which undoubtedly it then believed to be an entirely valid practice. Subsequently the trustee caused proper title to be taken and recorded; no loss or damage resulted from the technical breach of trust. What Mr. Justice Drew wrote in Guthrie's Estate, supra, may well be applied to the present situation (p. 538):

"The loss which the exceptants have suffered, if any, has in no way been the result of the breach of trust here complained of, but, for all that appears, would have been nonetheless incurred had the mortgages been carried properly from the start. Clearly the exceptants should not be permitted to shift their loss to these trustees. It would be unconscionable to require the trustees to account in cash under the facts of this case. No court of equity should permit it. The exceptants have at most

suffered what may be only a temporary loss, and that solely because of the economic conditions of the times and the consequent general shrinkage in values. They would nonetheless ignore the good faith and sound business judgment of the trustees, who have made full disclosure of their conduct of the trust, and would take advantage for their own gain of a technical violation of law by the imposition of penalties therefor. The court below was plainly right in rejecting their claim. It is to be understood, however, that the decree of the court below is affirmed not because the conduct of the trustees was rightful, nor because there was an affirmance of their conduct by the exceptants, but because, under the circumstances, a grave injustice would result if the trustees were required to account in cash as claimed. The record now before us, very different from that with which we were confronted in Yost's Estate, appeals strongly to the conscience of a court of equity to relieve these trustees from the penalties which were imposed in the Yost case, where, under the facts there shown, no such appeal was present. That a court of equity may in its discretion refrain from inflicting penalties which it considers unjust under the circumstances is beyond dispute."

We are in accord with the ruling of the auditing judge that these facts justify the intervention of equity in refusing to penalize the trustee for its technical violation of the trust under Guthrie's Estate, supra, and the authorities thereunder. The auditing judge's ruling in declining to surcharge is approved.

The widow of settlor, who elected to take against his will, is clearly entitled to her spouse's share under the intestate law. When settlor created the trust he provided that upon the death of his former wife the principal should pass to settlor if living. If not living then it was to devolve under the terms of his will; if there was no will it was to pass under the intestate law.

Exceptants contend, with great earnestness, that the effect of this provision was to reserve in settlor the right

of appointment by will; that he did so appoint by will, and that, therefore, the widow may not, by election to take against the will, frustrate settlor's right of appointment. Counsel for exceptants relies largely upon Kates' Estate, 282 Pa. 417. However, that case is merely authority for the principle that a widow electing to take against a will which exercises a power of appointment takes no part of the appointed estate. That line of cases has no application to the present situation.

The deed provides that upon the death of the life tenant the principal of the trust reverts to settlor, if living, and if not, then under his will, and in the absence thereof, under the intestate law. Nothing is clearer than that settlor possessed an absolute estate in remainder. Obviously he was not reserving a mere general power of appointment by will. But any suspicion of a doubt is removed when we read in the deed itself, following the alternative dispositions of the remainder: ". . . in such way and manner as though the said Trust Estate had been the sole property and in the sole possession of the [settlor] at the time of his death."

As this remainder formed part of settlor's estate, the widow's election to take against the will gave her whatever interest in her husband's estate she would have been entitled to had the testator died intestate: Section 23 (*a*) of the Wills Act of June 7, 1917, P. L. 403. No citation of authority need be given as to such a widow; the result is as though there had been no will insofar as she is concerned. We approve the ruling of the auditing judge.

With the approval of the auditing judge, and to correct what was inadvertently not brought to his attention, the exception of Carolyn M. Graeve, executrix of the Estate of Estelle D. Myers (life tenant), to the supplemental adjudication is sustained, and the supplemental adjudication is modified as herein directed. All other exceptions to the adjudication and its supplements are dismissed. The adjudications, as modified, are confirmed absolutely.