**Leslie J. HAMILTON et al., Appellants,**

**v.**

**SAN ANTONIO LOAN & TRUST COMPANY et al., Appellees.**

**No. 12691.**

Court of Civil Appeals of Texas.

San Antonio.

Sept. 8, 1954.

Rehearing Denied Oct. 20, 1954.

M. A. Childers, San Antonio, for appellants.

L. M. Bickett, San Antonio, for appellees.

NORVELL, Justice.

By judgment rendered May 5, 1924, San Antonio Loan and Trust Company was appointed trustee of all notes, money and personal property set apart to the estate of John B. Hildebrandt, deceased, and empowered to invest, manage and control the same during the life of Barbara Hildebrandt, the wife of said John B. Hildebrandt. The trust company in the present suit impleaded the remaindermen named in the will and the beneficiaries under the will of Mrs. Barbara Hildebrandt, to determine their respective rights in 97.7 acres of land located in Colorado County, Texas, and the proceeds derived from the sale of two oil and gas leases covering the same. Judgment below was rendered in favor of the remaindermen named in the will of John B. Hildebrandt, deceased.

The facts are for the most part undisputed and upon request the trial judge prepared findings of fact and conclusions of law.

The will of John B. Hildebrandt contained the following provision:

"I give, devise and bequeath to my wife, Barbara Hildebrandt, the entire income of all my property, both real and personal, to be used by her and for her benefit during her lifetime * * * (and) upon the death of my said wife, I desire that all the remainder of my property, real, personal, and mixed, be divided between the following named persons or their survivors, share and share alike, * * *." (Here follow the names of John F. Hildebrandt and seventeen others, generally referred to as the remaindermen.)

Among the assets of the estate which came into the possession of the trustee was a promissory note for the principal sum of $1,300, executed by Richard M. Craig and others and secured by a lien on the 97.7 acres above mentioned. The trustee filed suit on the note and on March 16, 1937, secured a judgment for the sum of $2,557.83, together with an order foreclosing the lien. The decree provided, however, that no personal judgment was rendered against the defendants in the suit who were the makers of the note. The trust company bought in the property at sheriff's sale held on May 4, 1937, and has held the legal title thereto since that date.

On July 27, 1945, the trustee executed an oil and gas lease covering the property and received a bonus payment of $4,885. A similar lease for a like consideration was executed on February 13, 1951. Both leases were for a primary term of five years and the delay rentals were paid over to Mrs. Barbara Hildebrandt until her death on October 28, 1952.

The trustee took the position that the bonus payments were part of the corpus of the estate and the trial judge agreed with this view. The appellants, Leslie J. Hamilton and Frances Hamilton, sole beneficiaries under the last will and testament of Mrs. Barbara Hildebrandt, contend that interest on money is income and belongs to the life tenant, and that accordingly any property purchased or acquired by or through the use of the claim for interest held by Barbara Hildebrandt became her property. As analyzed by appellees, this is essentially a case wherein an asset of the estate, despite its various mutations, has increased in value over the years, and they contend that this increase in value and the proceeds realized as a result thereof (evidenced by the oil and gas lease) belonged to them, First National Bank v. Mulholland, 123 Miss. 13, 85 So. 111, 13 A.L.R. 1000, and annotations following the report in A.L.R., subject to the life tenant's right to receive the interest upon the bonus paid for the leases until her death. Mitchell v. Mitchell, 151 Tex. 1, 244 S.W.2d 803.

However, the land acquired by the estate can not be considered as essentially the same thing as the note held by Hildebrandt at the time of his death. To do so would be to disregard certain important realities of the situation. Undoubtedly interest is income, and the judgment of March 16, 1937, provided for a recovery of $2,557.83, of which amount $1,257.83 was interest or income. This judgment was in turn used to acquire the land which together with the bonus payments received from the sale of an oil and gas lease thereon constitute the subject matter of this lawsuit. While, as above pointed out, it is appellees' primary contention that there is no "income" due appellants, because no interest on the note was ever collected in cash and all ordinary rentals and revenues from the land have been paid to the life tenant, it is mentioned in passing, that upon the foreclosure sale the tract of land was bid in for $1,500. It can not well be contended that this bid represented or even indicated the market or intrinsic value of the land at the time. The trustee, as plaintiff in judgment, accepted a decree releasing Richard M. Craig and the other makers of the note from all personal liability thereon. The result of this was to remove the motive to secure as high a price as possible

for the property involved, insofar as the makers of the note were concerned. One important element which generally tends to bring the price received at a foreclosure sale in line with market value was effectually destroyed by the decree itself. Consequently there is no basis in the record for assuming that the property was worth less than the total amount of the judgment. (The same might likewise be said of an assumption that at the time of foreclosure the land had a value in excess of the amount of the judgment.) However that may be, if the foreclosure be considered a salvage operation, so to speak, the applicable rule is stated by Bogert as follows:

"Usually at the time of foreclosure of the mortgage there are sums due both on account of interest and principal. The common method of dealing with the matter is to divide the proceeds of the foreclosure between trust income and trust capital in proportion to the amounts of interest and principal due on the mortgage at the time of the foreclosure, where the sum produced is less than the whole balance of principal and interest due. Thus, if a trustee forecloses a mortgage on which there is due $1,000 of principal and $50 of interest, and after the expenses of the foreclosure are deducted there remains a balance of $525 cash in the hands of the trustee, it would seem equitable to hold that one twenty-first of the proceeds, or $25, should be treated as income for the life cestui and twenty twenty-firsts, or $500, should be added to trust capital. There is no reason for allocating the loss entirely to capital or to income. No question of intent of settlor or mortgagor is involved. In foreclosing the trustee was attempting to get both back interest and principal, and he succeeded only partially in his effort as to each." 4 Part 1 Bogert, Trusts and Trustees, 248, § 820. See also, 65 C.J. 822, Trusts, § 705.

It is undisputed that the judgment represented both principal and interest.

This judgment was exchanged for land. It was used to buy land in other words. That portion of the judgment represented by interest and belonging to Mrs. Hildebrandt was therefore used to acquire or "buy" land, and as a result she became the equitable owner of the same proportionate interest in the land as she had formerly held in the judgment. The doctrine of resulting trusts is applicable to the case. Neill v. Keese, 5 Tex. 23, 51 Am.Dec. 746; McCoy's Heirs v. Crawford, 9 Tex. 353; Hix v. Armstrong, 101 Tex. 271, 106 S.W. 317; Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237; Mauritz v. Bell, Tex. Civ.App., 81 S.W.2d 730, wr. ref.; Restatement of the Law of Trusts, §§ 430 and 455; 54 Am.Jur. 153, 161 Trusts, §§ 194 and 206.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

W. O. MURRAY, Chief Justice.

I dissent in part from the opinion of the majority.

I cannot agree that we should establish an implied trust, either constructive or resulting for the reason the estate here is being administered under the terms of an expressed trust. Where there is an expressed trust in existence and being properly administered there is no occasion for an implied trust. Bogert on Trusts, Vol. 2-A, page 555, § 468. If the trust here be regarded as a resulting trust, then it was created by the judgment of the 73rd District Court dated May 5, 1924, and there is no reason why we should now create another and different resulting trust. We should tell the trustee what his duties are under the existing trust, not create a new trust.

I agree with the application of the so-called Chapal-Otis rule as to the $9,770 received by the trustee as a consideration for the oil and gas lease upon the 97.7 acre tract. This money was received during the lifetime of the life cestui in consideration of a sale of a part of the mineral estate

and therefore should be divided between corpus and income in proportion to the amount of principal and interest which was due on the note at the time of the foreclosure, described generally as 51% principal and 49% interest. Matter of Chapal's Will, 269 N.Y. 464, 199 N.E. 762, 103 A.L.R. 1268; Matter of Otis' Will, 276 N.Y. 101, 11 N.E.2d 556, 115 A.L.R. 875.

I have some doubt that the life cestui should be permitted under all the facts to participate in the profit realized by the sale of a part of the oil and gas estate, but I am not dissenting upon this point. My doubt is based upon the following statement found in Bogert on Trusts, Vol. 4, Part 1, § 820, page 25:

"In rare cases a trustee may foreclose a mortgage, bid in the property himself, hold it for a time and then sell at a profit after replacing income and capital due and paying expenses. Should such a profit go to capital, or to income, or be apportioned between them? Since both capital and income bear the risk of loss on a foreclosure of a trust mortgage, it would seem equitable that they should share gains in proportion to the size of their interests, and some cases have reached this result. But in other instances the profit has been awarded to trust capital, apparently on the theory that accidental increases in the value of trust assets constitute accretions to capital and that the realty held must have advanced in value due to growth of the community, a change in price levels, or similar reason. Cases granting such a profit to the life tenant as income seem unexplainable." Burnett v. Witschief, 96 N.J.Eq. 71, 126 A. 23; Equitable Trust Co. v. Swoboda, 113 N.J.Eq. 399, 167 A. 525.

As to the 97.7 acre tract which was on hand and had not been sold at the time of the death of the life cestui, I think it should be treated as a part of the corpus of the estate. There is no duty on the part of the trustee to account to the life cestui for any income from land taken in a mortgage salvaging operation until the land is resold and proceeds are received by the trustee. In re Spear's Estate, 333 Pa. 199, 3 A.2d 789.

Where the life cestui dies before the land is resold there is no income to which the executor of the life cestui is entitled. In re Spear's Estate, 333 Pa. 199, 3 A.2d 789.

I feel that judgment should be rendered in keeping with the above principles.

## On Motion for Rehearing

NORVELL, Justice.

In our original disposition of this cause, we provided that the judgment should be reversed and remanded to the trial court for further proceedings not inconsistent with this Court's opinion. In their motion for rehearing appellees suggest that it would be proper to direct the trial court to ascertain and determine the value of the land at the time it was acquired under the sheriff's deed. In view of this contention and in order to obviate any misunderstanding upon a remand, we will say that such procedure would be inconsistent with this Court's opinion and the holdings contained therein.

We held that upon the acquisition of the land through foreclosure of the note, Mrs. Hildebrandt became the beneficial owner of an undivided interest in land to the extent that the item of interest proportionately bore to the total amount of the judgment; such interest being approximately forty-nine per centum. Thereafter she and her successors in interest were entitled to the rents, profits, oil bonuses and sales accruing from this forty-ninth per cent interest. The ascertaining of the exact amount requires some accounting and for that reason this cause was remanded to the trial court in order that judgment may be rendered for fixed and definite percentages and amounts.

We have carefully considered appellees' motion for rehearing, but adhere to the views expressed upon our original disposition of this cause. Such motion for rehearing is accordingly overruled.