OF

## THE STATE OF NEW JERSEY.

FEBRUARY TERM, 1892.

ALEXANDER T. McGILL, ORDINARY.

ABRAHAM V. VAN FLEET, VICE-ORDINARY.

In the matter of the account of GEORGE F. TUTTLE, surviving executor of the last will and testament of William Miles, deceased.

1. When a fund is held in trust for the benefit of one person for life and another in remainder, and part of that fund is lost; because of the insecurity of a particular investment, such loss is to be apportioned between the life-tenant and remainderman in the proportion which the principal sum involved in the insufficient security bears to the interest due upon it at the time when the security is realized upon and the amount of the loss is determined, and when the loss is not ascertained until after the death of the life-tenant, the interest upon the principal sum involved, from the death of the life-tenant to the date of the ascertainment of the loss, is to be added to and form part of such principal sum.

259

---

Tuttle's Case.

---

2. In such case, taxes assessed against the security, while it is held pending realization upon it, must be charged against and paid out of the amount apportioned to the life-tenant.

---

On appeal from decree of the Essex county orphans court.

*Mr. John H. Meeker, pro se.*

*Mr. Joseph N. Tuttle,* for the executor.

THE ORDINARY.

William Miles died in 1872, leaving a will, by which, among other things, he directed his executors to hold the sum of $30,000 in trust, and invest and reinvest the same and pay the net income thereof to his widow during her life, and, at her death, pay the principal into the residue of his estate, which he bequeathed to his nephew and partner, William James, and one William Felts, in equal shares. George F. Tuttle and Samuel C. Royce were appointed executors of the will. Subsequently, in 1883, Royce died, and thereafter Mr. Tuttle alone managed the trust.

One of the residuary legatees, William Felts, became involved in business difficulties, and, in February, 1886, made an assignment to John H. Meeker, for the benefit of his creditors. Under that assignment Mr. Meeker claims to be entitled to a share of the principal of the trust fund.

The widow of William Miles died on the 13th of November, 1890.

Among other investments of the trust fund made by the executors was a mortgage for $3,000 upon unimproved lands of one Lawshe, in the city of Newark. After Lawshe had made several payments of interest he failed, and it became necessary for the then surviving executor to foreclose his mortgage. He foreclosed it, and, at the foreclosure sale, no one bidding sufficient to pay their decree, bought the property in for the benefit of the trust. Afterwards, in April, 1891, by direction of the orphans court, he sold the property so purchased for $2,900. During the time he held the property he paid $572 for taxes that were assessed upon it while it was in his hands.

The cost of foreclosure was $174.64, and the cost of sale of ·the property in 1891 was $49.30.

The questions now submitted are : *First.* What is the amount of the fund in the hands of the executor ?   *Second.* As between life-tenant and remaindermen, to whom, and in what proportion, does the fund belong ?

The amount realized by the ultimate sale of the property was $2,900.   It had cost $174.64 to foreclose the mortgage and .$49.30 to resell the property in 1891.   These sums were paid by the executor and are properly chargeable as losses from the fund. Deducted from the $2,900, they leave the amount of the fund .$2,676.06.   This is all that remains for both principal and interest of the investment upon the property of Lawshe.   The remaindermen claim that, as it is less than the principal invested, it all belongs to them ; that the responsibility for all loss to the ·fund must be charged to the life-tenant.

If this insistment should be accepted, it would throw the entire .responsibility of the efficient management of the trust upon the life-tenant, and that is not right.   If the trustee can be charged with negligence or bad faith, he should be held responsible, but if he be not so chargeable and a loss happens from causes over which neither he, nor the life-tenant, nor the remaindermen, had ·control, it should not fall upon the life-tenant alone.   The trust ·does not exempt the remaindermen from possible perils, through failure of investments, and throw those perils entirely upon the life-tenant.   The trust is instituted so that a person impartial ·between the life-tenant and remaindermen may put the fund in .a situation where it will not only yield income, but also be safe. If that situation fails, the loss should be equitably apportioned between the innocent life-tenant and remaindermen, according ·to their respective rights at the time the loss is ascertained and the apportionment of it is made.   That is, the right to income is not to cease when the failure occurs, but is to continue until ·the loss is ascertained and divided.   It would, obviously, be ·unjust to hold that, during the retention of the forfeited security for appreciation in value, all right to accruing income, unless it ·should be subsequently realized, must cease.   In such case the

entire profit of the delay in expectation of increase would go to·
the remaindermen, and the entire cost of the delay would fall
upon the life-tenant.   If delay be advisable, it should be held
to be a joint venture by the life-tenant and remaindermen, and,
to that end, the income should be allowed to accrue until the
delay terminates.   If delay be obviously injudicious, it is within
the power of either the life-tenant or remaindermen to compel
its termination.

This question has been met in *Hagan* v. *Platt, 3 Dick. Ch.
Rep. 206*, by Vice-Chancellor Pitney, who solves it by apply-
ing the rule securely founded in justice and good sense, and well
supported by recognized authority, that when a fund is held in
trust for the benefit of one person for life and another in remain-
der, and part of that fund is lost because of the insecurity of a
particular investment, such loss is to be apportioned between the
life-tenant and remaindermen in the proportion which the prin-
cipal sum involved in the insufficient security bears to the inter-
est due upon it at the time when the security is realized upon
and the amount of the loss is determined.   To which must be
added, because in this case it appears that the life-tenant died
before the loss was ascertained by sale of the property, the fur-
ther provision, that when the loss is not ascertained until after
the death of the life-tenant, the interest upon the fund, from the
death of the life-tenant to the date of the ascertainment of the
loss, is to be added to and form part of the principal sum in-
volved, so that full justice may be done to the remaindermen by
not requiring them to bear the entire cost of the delay in realiza-
tion after the death of the life-tenant.   This addition to the rule
was recognized in *Lloyd* v. *Carr, L. R. (45 Ch. Div.) 629.*

Now, in the application of the rule stated to this case, it satis-
factorily appears that interest upon the $3,000, calculated to the
death of the widow on the 13th of November, 1890, amounts to·
$2,545, and that interest upon the $3,000 from that date to the
sale, in April, 1891, amounts to $81.   Apportioning that which
was realized from the investment, $2,676.06, between the $3,000·
principal invested, with interest thereon from the death of the·
life-tenant to the sale, in April, 1891, $81, making together

$3,081, and the $2,545 interest due the life-tenant, in the manner prescribed in *Hagan* v. *Platt*, $1,468.29 must go to principal and $1,207.77 to income.

At this point the question arises whether the $573.16, which was paid by the trustee for taxes while he held title to the property, should be deducted from the fund thus apportioned before the apportionment, or should be paid out of the income alloted to the life-tenant.

It is settled in this state that a life-tenant who has the use of a fund must pay the taxes assessed against that fund (*Holcombe* v. *Holcombe, 12 C. E. Gr. 473 ; S. C. on appeal, 2 Stew. Eq. 597 ; Combes* v. *Cadmus, 9 Stew. Eq. 382 ; S. C. on appeal, sub nom. Cadmus* v. *Combes, 10 Stew. Eq. 264*), his or her liability being limited to the income received. *Murch* v. *Smith Mfg. Co., 2 Dick. Ch. Rep. 193.* The reason of this rule lies in the fitness of the exaction of annual charges, which go to the maintenance of the fund, from him who has the produce of the fund, otherwise the principal would be exhausted in its self-support. I perceive no reason why the taker of the produce of the fund here should be exempt from this duty. The taxes paid were all assessed during the continuance of the life-tenancy. In following *Hagan* v. *Platt*, the life-tenant is treated as though she were all the time in enjoyment of the fund. The insufficiency of the investment is not the fault of the remainderman, but is disaster which affects both principal and interest to the same proportionate extent. No sufficient reason, under the circumstances, appears why the life-tenant should be relieved from the ordinary duty of the life-tenant, so far as the amount apportioned to her will permit. The aggregate amount paid for taxes is much less than the sum apportioned to her for income, and it appears to me just that such payment should be charged against that sum.

It is unnecessary to state the principle upon which the orphans court proceeded in this matter. It will suffice to say that it did not adopt the rules stated, and for that reason its decree must be reversed, to the end that the account may be restated according to those rules.

Both parties have appealed in this case, and, therefore, the reversal will be without costs.