Trenton Trust and Safe Deposit Co. *v.* Donnelly.

---

THE TRENTON TRUST AND SAFE DEPOSIT COMPANY, trustee under Theodore Blackwell's will,

*v.*

BESSIE BLACKWELL DONNELLY et al.

[Filed May 25th, 1903.]

1. Money was bequeathed in trust to pay the interest to one for life, the *corpus* to go to others on her death. The *corpus* was diminished by unfortunate investments, and thereafter interest on the reduced *corpus* alone was paid the life tenant.—*Held,* that the loss should be apportioned by paying the reduced *corpus* to the remaindermen and the personal representative of the life tenant in the proportion that the original *corpus* bears to the unpaid interest on the part of the *corpus* which was lost.

2. Money was bequeathed in trust to pay the interest, less the taxes, to one for life, and after her death the *corpus* to others. The trustees loaned it on a mortgage, which, in consideration of a low rate of interest, bound the borrower to pay the taxes. The trustees were obliged to foreclose, and bought in the property, selling it for less than the *corpus* of the bequest, after paying taxes, which were a lien on it when they bought it.—*Held*, that such payment of taxes was not to be charged to the life tenant's interest.

3. The word "heirs" in a will giving personal property to a person, or, in case of his death, to his heirs, means next of kin.

4. Where testator bequeathed money in trust to pay the interest to his wife for life, and at her death bequeathed part of the principal to his sister, or, if she should die before receiving her share, then to her heirs, and the remainder of the principal to the heirs of his deceased brother, the next of kin of the sister are to be ascertained as of the date of her death, she dying before receiving her share, and those of the brother as of the date of testator's death.

On bill for the construction of a will.

*Mr. James Buchanan,* for the complainant.

*Mr. William M. Lanning,* for the defendants Florence Blackwell and Emily Blackwell.

*Mr. Alfred M. Lafetra,* for the defendant Bessie Blackwell Donnelly.

*Messrs. Dungan & Reger,* for the defendant Jacob Kline, Jr.

*Mr. Frederic M. Pearce,* for the defendant Morgan.

REED, V. C.

Theodore Blackwell made a will on October 12th, 1872; the fourth, fifth and sixth clauses are as follows:

"*Fourth.* I give, devise and bequeath to my said Executors and the survivor of them the sum of *Twenty Thousand Dollars, In Trust, nevertheless,* to invest and keep the same invested, and the interest which shall accrue thereon less taxes and necessary expenses to pay semi-annually to my beloved wife Sarah I. Blackwell for and during the term of her natural life, or during the time she remains my widow which shall be in lieu of her right of dower in my estate.

Trenton Trust and Safe Deposit Co. *v.* Donnelly.

"*Fifth.* All the rest and residue of my estate I give, devise and bequeath as follows to wit, one Third thereof to each one of my two sisters Rebecca Weart and Elizabeth Rockwell share and share alike and to their heirs forever; and the remaining one-third thereof to the heirs of my deceased brother Philemon Blackwell.

"*Sixth.* At the decease of my said wife or at her marriage, the said sum of Twenty Thousand Dollars invested for her use as hereinbefore directed I also give, devise and bequeath as follows, to wit, one-third thereof to each of my said sisters Rebecca Weart and Elizabeth Rockwell, share and share alike, and if either one or both of my said sisters should die before receiving the share or shares to them given in this my will, then the lawful heir or heirs of such deceased sister shall have and take the share of such deceased ancestor, and the remaining one-third thereof I give, devise and bequeath to the heirs of my deceased brother Philemon Blackwell."

Testator died without issue November 4th, 1872. He left surviving him his widow, Sarah I. Blackwell; a sister, Rebecca Weart; a sister, Elizabeth Rockwell, and two children, Jacob Blackwell and Ephraim W. Blackwell, the children of a deceased brother, Philemon Blackwell. Sarah I. Blackwell, the widow, died July 21st, 1902.

The questions propounded are in respect to the course which the remainder of the legacy of $20,000 shall take, the life tenant being dead.

Rebecca, one of the sisters, married John A. Weart. She died July 13th, 1888, leaving a child—John A. Weart, Jr. By her will she left her property to John A. Weart, Jr., and her granddaughter, Bessie B. Weart. The wife of John A. Weart, Jr., died intestate, leaving Bessie B. Donnelly (*née* Weart) her only next of kin.

Elizabeth Rockwell, having married one Charles Morgan, who predeceased her, died intestate in February, 1885, leaving a number of children by this marriage surviving, three of whom are now dead.

Philemon Blackwell died intestate August 2d, 1844, leaving two children, one of whom—Jacob—died April 1st, 1863, before the death of the testator. The other son—Ephraim—died August 10th, 1888, after the death of the testator.

The first question arises between the personal representative of the life tenant and the remaindermen, and it arises because of the fact that the *corpus* of the estate of $20,000, devised in

the clauses already displayed, has become diminished by unfortunate investments, so that the trustees instead of having in hand the sum of $20,000, have only the sum of $14,232.51. The *corpus* of the estate was secured by a mortgage, which was foreclosed, and the mortgaged property was bought in by the trustees, who afterwards sold the same for the sum of $16,000, which sum, after paying the expenses of reducing the same to money, the taxes and commissions, was, as already remarked, reduced to the sum of $14,232.51. The property was bought in by the trustees at foreclosure sale on October 4th, 1899, and was sold by them fifteen days later.

The life tenant was paid interest in full upon the $20,000, less expenses, down to October 1st, 1898. Thereafter the trustees paid interest upon the reduced amount that came to their hands down to the death of the widow, with the exception of $225.06.

The question propounded is whether the executors of the widow are entitled, not only to this sum of $225.06, but also to the amount of interest which should have been paid had the *corpus* of the estate remained unimpaired down to the date when the security held by the trustees was turned into money. The amount of this unpaid interest is admitted to have been $1,144.03.

The rule which has been laid down in a number of cases respecting the apportionment of a loss occurring under conditions like the present is that the loss shall be apportioned between the life tenant and the remainderman in the proportion that the debt due the first bears to the amount which should come to the second, namely, the amount of the *corpus* of the estate; or, conversely, the amount realized shall be set apart to the remainderman and the life tenant in the proportion that the *corpus* bears to the unpaid interest due the life tenant. By force of this rule the $14,232.51 should be divided in the proportion that $20,000 bears to $1,114.03.

But it is insisted that the taxes paid by the complainant should be deducted from the life tenant's share thus ascertained. In my judgment, this position is not tenable. I am aware that Chancellor McGill, sitting as ordinary, did so order in *Tuttle's Case, 4 Dick. Ch. Rep. 260,* where the trustee had paid taxes

which had been assessed upon real estate intervening the time of the trustees' acquisition of the land and the time of the sale made of the same by the trustees. Under the conditions presented in that case, the ordinary thought it equitable to deduct these taxes from the life tenant's share, after it had been apportioned according to the rule already mentioned. In the present case the tax paid, so far as appears, was not assessed upon the property during the time it was held by the trustees under the title got by them at the foreclosure sale. The taxes were paid as a lien upon the property when it came to the hands of the trustees. The property could have been sold subject to this lien, but the trustees thought it advisable to discharge this lien so as to give an unencumbered title. The payment of the tax was therefore, in reality, one of the expenses incurred in transmuting the realty into cash to the best advantage.

Nor was the tenant for life bound to pay taxes upon this property specifically, either before or after the right of the trustees to enter for breach of condition in the mortgage accrued. The life tenant was obliged to pay the tax upon the *corpus,* and she was entitled, not to the income of this real estate, but to the income which $20,000, less the taxes, would produce. Now, if five per cent. upon this amount, upon the basis of which the debt due the life tenant is computed, is more than the $20,000 would produce, less taxes, it would follow that the debt of $1,144.03 is too much. This follows because she was only entitled to the production of the *corpus,* less the taxes which she was bound to pay. By the provision in the mortgage these taxes were so paid by fixing the interest to be paid by the borrower at a lower rate and binding him to pay the taxes. There is nothing to show that the *corpus* would not have produced the five per cent., as well as the amount of the tax, up to the time the security was realized. By reducing the annual income to five per cent. the taxes were, in fact, deducted from the income of the life tenant. In my judgment the representatives of the life tenant are entitled to share in the *corpus* in the proportion already indicated, and her share is not to be diminished by any reduction on account of these taxes.

Another question propounded is whether the testator, in the

use of the word "heirs" in the fifth and sixth clauses of his will, is to be regarded as intending by that term "the next of kin of the legatees."

The testator was dealing with property which he ·had peremptorily directed to be transmuted by his executors from realty into personalty. It may be regarded as settled in this state that the word "heirs" is interpreted in reference to the kind of property, whether real or personal, which is the subject of testamentary disposition; and when those words are used in· respect to personal property, they will be construed to mean "next of kin." *Scudder* v. *Vanarsdale, 2 Beas. 109; Leavitt* v. *Dunn, 27· Vr. 311.*

In respect to the time when the next of kin are to be ascertained, I am of the opinion that the gift to Mrs. Rockwell, or in the event of her dying before receiving the share given to her, she having died before receiving her share, this share goes to her next of kin ascertained as of the date of her death in February, 1885. *Gundry* v. *Pinniger, 14 Beav. 94, 98; Jacobs* v. *Jacobs, 16 Beav. 557.*

In respect to the gift to the "heirs of my deceased brother Philemon Blackwell," his next of kin is to be ascertained ·as of the date of the death of the testator—October 12th, 1872. *Wharton* v. *Barker, 4 K. & J. 483, 488; Philps* v. *Evans, 4 De G. & S. 188.*

These answers dispose of all the mooted queries propounded in the bill.