Frank Swoboda, the husband of Marie Swoboda, died leaving a will, by the terms of which the widow was ignored and *Page 400 
his brothers and sisters made the sole beneficiaries thereunder. Mrs. Swoboda filed a caveat against the probate of the will, as a result of which a settlement was effected between the parties, under the terms of which the beneficiaries under the will set aside "6% mortgage securities of the estate of Frank Swoboda amounting to forty thousand ($40,000) dollars face value" in trust, "the net income from the said trust fund to be paid to Mrs. Swoboda for and during the term of her natural life," on her death the principal fund to be returned to the donors (beneficiaries).
The trust agreement also provided that the trustee should collect the profits, income, c., of the trust estate "and after deducting all proper costs and charges" pay the net income to Mrs. Swoboda.
The trust estate consisted of seven first six per cent. mortgages on real estate situate in Philadelphia, Pa., and no difficulty arose until default in payment of interest on a $4,000 mortgage occurred. Since that time there has been additional defaults on other mortgages, so that it appears to be necessary to foreclose over one-half of the trust mortgages.
The parties to the trust, Mrs. Swoboda, the life-tenant, and the donors of the trust fund, the remaindermen, are unable to agree as to whether the costs and expenses of foreclosure should be taken, in the first instance, from the income or principal of the trust estate; from what source insurance premiums and other charges on the property, caused by mortgage default, should be taken; whether it is the duty of the trustees to foreclose without being put into possession of funds, either by the life-tenant or the remaindermen, and "if the trustees advanced the funds, would such advances constitute a charge against the estate in the trustees' possession?"
Taking up the question as to the duty of the trustees to foreclose. All of the parties agree that foreclosures are necessary in order to preserve the assets of the trust and that being the situation, it is, of course, the duty of the trustees to proceed to foreclosure in every instance when in the good judgment of the trustees such a course is necessary in order to protect the trust estate, and if the parties to the trust refuse *Page 401 
to advance the necessary funds to the trustees, such advances as the trustees may make for the purpose of foreclosure and the protection of the trust estate will constitute a charge against the trust estate in the trustees' possession. Turton v. Grant,86 N.J. Eq. 191; Villa Site Co. v. Copeland, 91 N.J. Eq. 503.
Should the expenses of foreclosure be paid, in the first instance, out of income or out of principal?
The trust agreement, by its terms, does not afford an answer to this question, unless it be in this part thereof: "After deducting all proper costs and charges" the net income of the trust fund is to be paid to Marie Swoboda.
I think that the limitation "proper charges" refers to those charges incidental to the ordinary management of a trust estate,i.e., commissions, taxes, repairs and such other expenses as are ordinarily charged to income, and that "proper charges" excludes those charges which are ordinarily charged to principal.Ann. Cas. 1918 E. 959, citing In re Heist, 77 Misc. 432;137 N Y Supp. 768.
It seems to me to be clear that no matter what the rule may be in other jurisdictions, the reasonable costs of foreclosure, under the circumstances of this trust estate, should be borne, in the first instance, out of the principal, and the final adjustment must abide the events following the foreclosures. Should it so happen that the trustees purchase the mortgaged premises at the foreclosure sale or sales, and subsequently sell at a profit over and above the amount of the principal, costs,c., then the profit will belong to the corpus of the estate and not to the life-tenant. Parker v. Johnson, 37 N.J. Eq. 366.
On the other hand, should the final result be that the property is bought in by the trustees and subsequently sold at a loss, there will be an apportionment between principal and income in accordance with the principle laid down in the following cases: Hagan v. Platt, 48 N.J. Eq. 206; Tuttle's Case, 49 N.J. Eq. 259; Trenton Trust and Safe Deposit Co. v. Donnelly,65 N.J. Eq. 119.
To hold otherwise would be in accordance with the decision inIn re Wordin's Appeal, 71 Conn. 531; 42 Atl. Rep. 659, *Page 402 
but our courts do not seem to have followed the rule laid down in Connecticut, but on the other hand, in the Tuttle Case, supra, the ordinary, it seems to me, held otherwise, and the rule adopted in that case, as well as in the other cases which preceded and succeeded it, was based on fairness to both the life-tenant and remaindermen, the court saying:
"The insufficiency of the investment is not the fault of the remainderman, but is disaster which affects both principal and interest to the same proportionate extent. No sufficient reason, under the circumstances, appears why the life-tenant should be relieved from the ordinary duty of the life-tenant, as far as the amount apportioned to her will permit."
"If a loss happens from causes over which neither he (the trustee), nor the life-tenant, nor the remaindermen, had control, it should not fall upon the life-tenant alone. The trust does not exempt the remaindermen from possible perils, through failure of investments, and throw those perils entirely upon the life-tenant. The trust is instituted so that a person impartial between the life-tenant and remaindermen may put the fund in a situation where it will not only yield income, but also be safe. If that situation fails, the loss should be equitably apportioned between the innocent life-tenant and remaindermen, according to their respective rights at the time the loss is ascertained and the apportionment of it is made."
It may well be that after the foreclosure sales a question will arise which should be answered at this time, which is: Out of what fund will the cost of carrying the property after foreclosure be paid, in the first instance, assuming that the property so foreclosed and bought in by the trustees is unproductive?
The answer is that the expense will be paid, in the first instance, out of the principal of the trust fund, but this expense should be deducted from the gross proceeds realized upon a sale thereof. 2 Perry Trusts (7th ed.) § 548c, citingTrenton Trust and Safe Deposit Co. v. Donnelly, supra. *Page 403