# SAN ANTONIO LOAN & TRUST COMPANY ET AL V. LESLIE J. HAMILTON ET AL

No. A-4974. Decided July 20, 1955.
Rehearing overruled November 9, 1955.
(283 S. W. 2d Series 19)

*L. M. Bickett*, of San Antonio, for petitioners.

The Court of Civil Appeals erred in holding that Mrs. Hildebrandt, the life tenant, became the owner of a proportionate interest in the tract of land bought in at a foreclosure sale by the trustee, and she became the equitable owner of an interest in the land, in proportion to the amount of the accrued interest, because the interest acquired under the foreclosure became a part of the corpus of the trust estate, subject to the express trust created by the will of John B. Hildebrandt. Magnolia Park Co. v. Tinsley, 73 S.W. 75; Equitable Trust Co. v. Swoboda, 113 N.J. Eq. 399, 167 Atl. 525; Spears Estate, 333 Pa. 199, 3 Atl. 2d, 789.

*M. A. Childers,* of San Antonio, for respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

The will of John B. Hildebrandt was duly probated in Bexar County, Texas. The will contained the following provision:

"I give, devise and bequeath to my wife, Barbara Hildebrandt, the entire income of all my property, both real and personal, to be used by her and for her benefit during her lifetime, * * * and, upon the death of my said wife, I desire that all the remainder of my property, real, personal and mixed, be divided between the following named persons or their survivors, share and share alike * * * ."

Eighteen persons were named as remaindermen. Four of these

died prior to the death of the life tenant, Mrs. Hildebrandt, who died testate on October 28, 1952. The respondents, Leslie J. Hamilton and Frances Hamilton, were and are the sole beneficiaries under the last will and testament of Mrs. Barbara Hildebrandt. Leslie J. Hamilton is the independent executor of the will and estate of Barbara Hildebrandt.

After the will of John B. Hildebrandt was probated a suit was filed in the District Court of Bexar County, Texas, by Barbara Hildebrandt, the life tenant, against the fourteen surviving remaindermen, and on May 5, 1924, a judgment was entered appointing the San Antonio Loan & Trust Company as Trustee of "all the notes, money and personal property set apart to the estate of John B. Hildebrandt, deceased, in said decree to invest, manage, and control the same for and during the natural life of Barbara Hildebrandt, the life tenant under the will of her husband, John B. Hildebrandt, deceased; said decree provided that, after retaining out of the income from the same the fees allowed executors by law, said Trustee shall pay the remainder of the entire income of the property in its hands as such Trustee to the said Barbara Hildebrandt for her use and benefit, and after her death said Trustee shall dispose of said notes, money and personal property in accordance with the terms of the last will and testament of the said John B. Hildebrandt, deceased, and as heretofore ordered by this Court."

The San Antonio Loan & Trust Company filed this suit against the two named beneficiaries under the will of Mrs. Barbara Hildebrandt, and the fourteen remaindermen alleging that a controversy existed between the beneficiaries of the life tenant and the remaindermen as to the ownership of certain property in possession of the Trustee and that it was necessary that this issue be determined in order that it could make a final distribution of such property, and it further requested the court to approve its "accounting as Trustee" and that the trust be terminated.

The cause was tried to the court without the intervention of a jury on an agreed statement of facts. The trial court entered its judgment awarding the property to the remaindermen and directed the Trustee to deliver to said remaindermen all of the property, real and personal, then in the possession of said Trustee.

The judgment allowed the Trustees to retain the sum of $676.21 to cover income taxes theretofore paid by the Trustee,

and the further sum of $500.00 as attorney's fees. All relief sought by the parties and not specifically decreed was denied, and all costs was adjudged against the defendants, Leslie J. Hamilton, individually, and as independent executor of the estate of Barbara Hildebrandt, and Frances Hamilton. This judgment has been reversed and remanded by the Court of Civil Appeals. 272 S.W. 2d 384.

The judgment of May 5, 1924, appointing the San Antonio Loan & Trust Company trustee, placed in trust a certain note in the sum of $1,300.00. That note was secured by liens on a tract of land consisting of 97.7 acres situated in Colorado County, Texas, which is fully described in the judgment of the trial court. On the 11th day of January, 1932, the Trustee filed suit in the District Court of Bexar County against the makers of the $1,300.00 note. The agreed statement of facts in the present case recites that "the case was not disposed of until the 16th day of March, 1937, at which [time] judgment was entered for the sum of $2,557.83, of which $1,300.00 was principal and $1,257.83 was interest." The stipulation further recites that the judgment contained the following: "* * * but no personal judgment is rendered herein for any sum of money against the defendants or any of them; and it is hereby ordered, adjudged and decreed that said deed of trust lien as it existed February 1, 1923, and at all times since said date is hereby established and foreclosed as against all of said defendants." It was further stipulated that "sale was made under this judgment, and at the Sheriffs sale the said tract of 97.7 acres of land in Colorado County, Texas, was bid in by San Antonio Loan and Trust Company, Trustee, upon a bid of $1,500.00. The Sheriff's deed is dated May 4, 1937, * * * that the Trustee of the Estate of John B. Hildebrandt in 1937 paid out of principal the following items in connection with the foreclosure suit * * * :

"1937

| | | |
|---|---|---|
| April 3 | Denman, Franklin & Denman | $50.00 |
| May 13 | U. S. Revenue Stamps on Sheriff's Deed | 1.50 |
| May 13 | Sheriff, Colorado County | 42.80 |
| May 15 | County Clerk, Colorado County | 1.50 |
| May 24 | District Clerk, Bexar County | 21.50 |
| | | $117.30" |

Since obtaining title to the land the Trustee has executed

two oil and gas leases thereon and received $9,770.00 in bonus payments. The bonus payments have been invested in United States Savings Bonds, and the interest thereon and the rentals received, as provided in the leases, were paid to Mrs. Barbara Hildebrandt. The Trustee has fully discharged its duty by paying all income to the life tenant in accordance with the last will and testament of John B. Hildebrandt. The Trustee admittedly has in its possession the tract of land above mentioned as well as the bonus payments now in the form of United States Savings Bonds.

The petitioners contend that the rule announced in the cases of Re West's Estate, 289 N. Y. 423, 46 N.E. 2d 501; 149 A.L.R. 1365; Equitable Trust Co. v. Swoboda, (1933) 113 N. J. Eq. 399, 167 A. 525 and Van Vleck v. Lounsberry, 1885, 34 Hun., N. Y. 569 should control, and under authority of those cases this Court should hold in the case at bar that when a mortgage in default is foreclosed and title to the property is acquired by the trustee, the original mortgage investment is at an end and a salvage operation is initiated. The real property thus acquired is substituted for the mortgage in the hands of the trustee and takes on the character of personality. The petitioners further contend that the life tenant had no interest in or title to the note, and that the tract of land, which took the place of the note, remained at all times a part of the corpus of the estate; that the life tenant was paid all the income received by the trustee, and that upon her death, the petitioners-remaindermen were entitled to all the property, including the tract of land involved as well as the bonus payments. Petitioners present, in the alternative, a contention that this Court should give effect to the rule announced by the Supreme Court of Ohio, which is shown in the annotation appearing in 103 A.L.R. 1299, where it is said: "In Willis v. Holcomb (1911) 83 Ohio St. 254, 94 N.E. 486, where a trustee foreclosed a mortgage securing a note held by the trust on which interest was in default, and purchased the property at the foreclosure sale, and the property increased largely in value, the court said that the proceeds from a subsequent sale should be applied, first, to restore the amount of the original trust fund; then to the life beneficiary for any interest which the trust would have earned if it had been kept invested according to the terms of the will, and which the beneficiary was not estopped from claiming by having enjoyed the benefits of the property; any surplus to be added to the original trust fund to form new principal."

The respondents take the position that the judgment for

the sum of $2,557.83 was for the principal of the note sued upon in the sum of $1,300.00, and interest to the date of the judgment in the sum of $1,257.83; that the principal of the note was the property of the estate of John B. Hildebrandt and the interest was the property of Mrs. Barbara Hildebrandt; that the tract of land involved was purchased with the funds of both estates, and, therefore, Mrs. Hildebrandt became the equitable owner of the same proportionate interest in the land as she had formerly held in the judgment. The respondents contend that distribution should be made on the basis of 51% to the remaindermen and 49% to the respondents.

The facts in this case reflect that the foreclosed property represents an investment of both principal and unpaid interest. The judgment for $2,557.83 was exchanged for the land. Even though the Trustee bid the property in for only $1,500.00, there being no personal judgment, the case should be treated as if the land had been taken in satisfaction of the principal and accrued interest on the note as of the date of judgment.

The record is silent as to value of the land at the time of foreclosure and purchase by the Trustee, and so far as the records shows, it was unproductive and no benefits were derived from the land until 1945, the date of the execution of the first oil and gas lease. At that time the Trustee received and retained a bonus payment of $4,485.00. On February 13, 1951, another oil and gas lease was executed and a bonus of $4,485.00 was paid to the Trustee and that sum was likewise retained by the Trustee. The tract of land and the United States Savings Bonds which were purchased with the proceeds from the oil and gas leases represent a profit on the original investment.

The question for our determination is: Who is entitled to the profits? Since a profit has been shown, we approach this question as if the entire tract of land had been sold. We have for the first time in this jurisdiction the question of whether or not an apportionment of profits should be allowed as between a life tenant and remainderman; or whether this jurisdiction should adopt the rule that the property involved in this case be declared a part of the corpus of the estate, and, therefore, upon final settlement, be delivered by the Trustee to the remaindermen. In order to determine the ultimate rights of the life tenant and remaindermen it becomes necessary to review cases in other jurisdictions where the problem of apportionment has arisen when a sale resulted in a loss as well as when the sale resulted in a profit. The early English case of Cox v. Cox, L.R. 8 Eq. 343,

344 (1869) did not involve a mortgage foreclosure, but it announced the rule that " 'the true principle in all these cases is, that neither the tenant for life nor the remainderman is to gain an advantage over the other—neither is to suffer more damage in proportion to his estate and interest than the other suffers—from the default of the obligor. The two must share the loss in the same way as they would have shared it had it occurred when they first became entitled in possession to the fund.' " It seems to be universally accepted that in the event of a loss caused by the failure of a mortgage investment, where both the life tenant and remainderman are affected, such loss should be borne by both. See Matter of Chapal's Will, 1936, 269 N.Y. 464, 199 N.E. 762, 103 A.L.R., 1271; Matter of Otis Will, 1938, 276 N.Y. 101, 11 N.E. 556, 115 A.L.R., 881; In re Nirdlinger's Estate, 1939, 331 Pa. 135, 200 Atl. 656, 116 A.L.R., 1354; Title Guarantee L. & T. Co. v. Hamilton, 1940, 238 Ala. 304, 193 So. 363, 129 A.L.R. 1314; 2 Scott on Trusts (1939, Sec. 241.3. The conflict in the decided cases seems to arise where the sale resulted in a profit because of the conflicting rule that accretions to a trust fund normally go to principal.

In the English case of Re Moore (1885) 54 L. J. Ch. N.S. 432 the doctrine of apportionment was applied. In that case, 8000 pds. was invested in the trust mortgage. The interest was in arrears in the sum of 536 pds. when the property was foreclosed. The property sold for 7,900 pds. The court held that the 7,900 pds. should be apportioned between principal and income in the ratio of 8,000 pds. to 536 pds. The New York case of Roosevelt v. Roosevelt, (1881) 5 Redf. (N.Y.) 264 allowed the life tenant a share in the ultimate proceeds of sale of foreclosed trust properties.

In the case of Farmers' Loan & Trust Co. v. Hall, (1887) 5 Dem. (N.Y.) 73 the apportionment doctrine was not applied. The facts in that case would seem to warrant the application of the apportionment rule, but the court ruled that the case of Roosevelt v. Roosevelt, supra, was not in point, and held that the entire proceeds of sale of mortgaged trust property were to be regarded as corpus. The reasons given by the court for so holding are not persuasive. First, the court concluded that there was no sum to be considered in the light of income, and no question as between a life beneficiary and remainderman. A careful reading of the case reveals that the question of apportionment of income was the issue before the court and the life tenant was insisting upon a distribution to income. The second reason assigned for holding that the entire proceeds of the sale should be

regarded as corpus was even less forceful than the first. The court stated that apportionment should not be allowed because "the loss or gain occurred on loans made by the trustee in the course of administration in making investments and not by the decedent." This conclusion ignores that fact that the principle of apportionment is invoked in order to relieve the life tenant of an undue burden of loss. Professor Bogert refers to the Hall case, supra, as "rather unusual," 4 Bogert, Trusts and Trustees (1935), p. 820, n.30. It is not a question of whose investment resulted in the loss. In Re Marshall, (1904), 43 Misc. 238, 88 N. Y. S. 550, the rule of apportionment was applied. In that case the investment was by the executor, not the testator. Subsequent decisions in New York and elsewhere have failed to take notice of the Hall case.

In the case of Hagan v. Platt, (1891) 48 N. J. Eq. 206, 21 Atl. 860, wherein the facts were very similiar to the Moore case, supra, the apportionment rule was adopted. That was another loss of profit case. The New Jersey courts have consistently followed the Hagan v. Platt case, supra, in applying the apportionment doctrine in cases where the record showed a loss after foreclosure. In the case of Meldon v. Devlin, (1898) 31 App. Div. 146, 53 N. Y. S. 172 (affirmed on opinion below, 1901, 167 N. Y. 573, 60 N.E. 1116, the court, in approving the apportionment doctrine, said: "It is well settled that where the interest upon mortgages is unpaid, and the premises are eventually sold, the sum received should be ratably apportioned between principal and income."

We come now to a consideration of the cases in other jurisdictions wherein the question of apportionment has arisen when the ultimate sale resulted in a profit. The courts seem to be in conflict on this question, especially in the State of New Jersey. In that jurisdiction the question of apportionment where the final sale resulted in a profit has perhaps been before the courts more often than any other. An analysis of these cases including those relied upon by petitioners from the New Jersey jurisdiction and others leads us to the conclusion that the same rule should be applied as in a case wherein apportionment was allowed when a sale of foreclosed mortgaged trust property resulted in a loss. The cases which seem to hold against apportionment of profit are principally those which either had a different factual background than the case at bar or the issues were drawn differently by virtue of the contentions, or rather the complete lack of a contention on the part of the life tenant that the profit should be apportioned between the respective parties.

The early case of Schoonmaker v. Van Wyck, (1860) 31 Barb. (N. Y.) 457, for example, held that the principal or remainderman was entitled to all the profits. That was not a case such as we have here. In our case, the foreclosed property represents an investment of both capital and unpaid interest. The facts are entirely different in the Van Wyck case, supra. There the testatrix left one-third of her estate to be invested in bonds and mortgages on real estate and to be held in trust for one Isaac Van Wyck during his life, with remainder over. The executor invested in a mortgage which was later foreclosed and the property purchased in the name of the executor. The property was held for approximately 15 years and sold for nearly $8,000 more than the amount paid at the foreclosure sale. The court in its judgment restored the amount of the original investment, and next ordered that the accrued interest be satisfied out of the money derived from the ultimate sale of the property, and finally adjudged that the remainder be allocated to principal.

A similar result was reached in the case of Parker v. Johnson, (1883) 37 N. J. Eq. 366. That case was one where the trustee had in his possession a defaulted trust mortgage. The mortgage was foreclosed and the property was purchased by the trustee. The property thus acquired was sold and after allowing for the principal and interest on the investment and of costs, carrying charges and expenses, a profit of $1,700.00 was realized. In addition to the mortgaged property involved, the trustee was in possession of three other pieces of property either as mortgagee or under a foreclosure, on which the trust fund might incur a loss. The life tenant did not ask that the $1,700.00 be apportioned between the tenant and remainderman, but, instead, asked that the $1,700.00 be applied to arrears of interest on the three suspended investments. In view of the issues thus drawn by the pleadings and the evidence, the court held: "There are no arrears on the investment which was made on the Orange street property. They have all been paid out of the proceeds of the sale of the property by the trustee. There are arrears of interest on the suspended investments, and the question is whether the life tenant is entitled to be paid those arrears out of the profit on the sale, or whether the profit should be held to make up a possible if not probable deficiency in the principal through losses on the suspended investments. The profit is not income. It was made by the trustee in the process of converting the investment, and, like a premium realized on the sale of government bonds in which the funds might be invested, it belongs to the fund. The trustee in this case is to

keep the fund invested, and the tenant for life is entitled to the interest. It is clearly the duty of the trustee to apply the profits on one investment to making up the losses on others."

The rule just quoted has no application to the present case. In our case, the trustee has in his possession the one piece of property together with the government bonds which were purchased with the oil and gas lease bonus payments above mentioned. The stipulation of the parties so reflects. There is no contention that it is necessary to hold the property or profits in order to make up possible or probable losses on other investments. The trustee is merely asking for a direction from the court as to the disposition to be made of the property. The solution of the question must necessarily be based upon the factual background, which is reflected in the agreed statement of facts.

The petitioners cite the case of Equitable Trust Co. v. Swoboda, (1933), 113 N.J. Eq. 399, 167 Atl. 525. This case which in our opinion, is distinguishable from the Parker v. Seeley case, 56 N.J. Eq. 110, 38 Atl. 280, held, by the way of dictum, that profits belonged to the remainderman, and cited Parker v. Johnson, supra, as authority. It did not refer to the case of Parker v. Seeley. In the latter case, the case of Parker v. Johnson was distinguished on the facts. We think the conclusion reached in the case of Parker v. Seeley should control our decision in the present case.

Petitioners cite the case of Van Vleck v. Lounsberry, 1885, 34 Hun. N.Y. 569, as authority for their contention that the profit should belong to the principal and not to the life tenant. This case is distinguishable from the present case in that, at the time of the foreclosure, there was no interest in arrears. Since there was no investment of interest or income in the property, the life tenant had no basis for a claim to any part of the profits. We quote from the opinion the following: " 'The other item is the sum of $1,300 obtained upon the sale of premises, the title to which was derived by the executrices under a foreclosure of a mortgage owned by the testator amounting to the sum of $8,000. It has been insisted on the part of the executrices that this excess of $1,300 over the principal of the mortgage should be applied and credited as so much income of the estate. *It was not made to appear by proof that this excess, or any part of it, consisted of interest or income from the mortgage itself,* but it was made to appear that up to the time when the property was sold and conveyed the rents derived from

it were applied and credited to the income of the estate.' " (Emphasis added.)

The rule announced in the case of Willis v. Holcomb, 83 Ohio St. 254, 94 N.E. 486, 103 A.L.R. 1299, relied upon by petitioners, cannot be applied to the facts in the case at bar. The life tenant did not pray for an apportionment of the profits; but, on the other hand, filed a suit to compel the trustee to sell property which had been acquired under a foreclosure proceeding, and to reinvest the proceeds remaining after paying to the life tenant the surplus over the original investment. At the time the case was tried, the property was still in the possession of the trustee and it had materially increased in value. However, it appears that the life tenant was also in possession of the real estate and had received rents and profits therefrom. The court held "where a trustee foreclosed a mortgage securing a note held by the trust on which interest was in default, and purchased the property at the foreclosure sale, and the property increased largely in value, the court said that the proceeds from a subsequent sale should be applied, first, to restore the amount of the original trust fund; then to the life beneficiary for any interest which the trust would have earned if it had been kept invested according to the terms of the will, and which the beneficiary was not estopped from claiming by having enjoyed the benefits of the property; any surplus to be added to the original trust fund * * * . " In the present case it has been conclusively established that the life tenant received only the income to which she was entitled both under the will of John B. Hildebrandt and the judgment appointing the trustee. The element of estoppel does not exist in this case.

The petitioners rely upon the case of In Re West, 289 N.Y. 423, 46 N.E. (2d) 501, 149 A.L.R. 1365. In their application for writ of error the following is quoted from the opinion: "When a mortgage in default is foreclosed and title to the property is acquired by the trustee, the original mortgage investment is at an end and a salvage operation is initiated. Matter of Otis' Will, 276, N.Y. 101, 111, 112, 11 N.E. 2d 556, 115 A.L. R. 875 The real property thus acquired is substituted for the mortgage in the hands of the trustee and takes on the character of personalty."

The primary question presented for decision in the West case was the constitutionality and construction of the provisions of "subdivision 2 of section 7-c of the Personal Property Law, L. 1940, ch 452, effective April 13, 1940; Consol. Laws, ch 41, in

so far as the same modify retroactively the rules relating to mortgage salvage operations." The opinion recites that "the new statutory rules allot to the life tenant out of the net income earned from the operation of real estate in salvage, an annual amount up to three percent of the face value of the mortgage investment. Such right is granted in lieu of the discretion vested in the trustee under the heretofore existing rules of trust administration to pay net income or any portion thereof to the life tenant, a discretion which has not been exercised generally by trustees through fear of possible surcharge." The validity of the statute was put in issue by a special guardian for an infant remainderman. The constitutionality of the statute was sustained, but it was held, as a matter of construction, that its scope was limited to cases where liquidation of real property acquired was incomplete. In the course of the opinion the quoted statement relied upon by petitioners was made, but immediately following we find the court saying: "* * * The trustee holds this real property so acquired and must administer it as an asset of the trust estate for the benefit of the life tenant and the remaindermen. Like the mortgage, it is 'security not for principal alone but for income as well.' Matter of Chapal's Will, 269 N.Y. 464, 472, 199 N.E. 762, 764, 103 A.L.R. 1268."

The West case, in our opinion, reaffirms the doctrine of apportionment as between income and principal, but goes on to say, in effect, that due to the economic depression of the 1930's the rules relating to mortgage salvage operations were speedily formulated in order to meet the emergency resulting from widespread foreclosures. The case of Matter of Otis' Will, 276 N.Y. 101, 11 N.E. 2d 556, 115 A.L.R. 875, which is cited in the West case, supra, relied upon by petitioners, was just such a case and the West case quotes language from the Otis case which clearly shows that the rules laid down in that case were tentative only and not intended to be final. In the Otis case the court further said: "Both capital account and income account, as described in the Chapal Case, are fictions. * * * If, then, the remaindermen are to participate in the apportionment on the feigned basis of unimpaired principal, the share of the life tenant should be computed on the same assumption. The invention of the 'original investment' is no more valid than the invention of 'unpaid interest' thereon. Indulgence in both fictions keeps the balance even between the respective parties in interest."

In our case we are not confronted with a situation requiring the establishment of a capital account and income account based on fiction. The Trustee foreclosed the mortgage after judgment

as heretofore indicated and the purchase of the property constituted an investment of both principal and income in definite amounts for the respective parties. The interest of the parties in the property was definite and certain at the time the title passed to the Trustee and has remained so throughout the period of the trusteeship.

The legislative act which was under consideration in the West case was passed because of the tendency of trustees, through fear of surcharge, to withhold the payment of income to life beneficiaries. This policy resulted in the accumulation of surpluses which caused the life beneficiaries to suffer undue hardships. The purpose of the act was stated by the Legislature, in part, as follows: " 'The purpose of the enactment of this subdivision is declared to be the simplification of the rules of procedure in mortgage salvage operations and the elimination of present complications which work to the disadvantage of the life tenant * * * by depriving him of a fixed right to the actual payment of any net income earned by the property. Such fixed right is granted in lieu of the discretion now given to the trustee to pay net income or any part thereof to the life tenant. * * * ' " The court held that the Legislature, by the enactment of the statute under consideration, adopted a statutory rule which required the trustee to apportion income in accordance with a fixed standard and that such standard was fair and reasonable in that it protected the interest of both income beneficaries and remaindermen. Thus, it is seen that the court upheld the constitutionality of the act and at the same time adhered to the rule that protection must be given to the life tenant and remaindermen alike.

■ Each case should be tried on its own facts. No set and fast rule can be announced which would completely govern all cases. We, therefore, can only announce a rule which will properly dispose of the issues in the case at bar. Since the tract of land consisting of 97.7 acres was purchased by the Trustee with funds belonging both to the life tenant and remaindermen, we hold that the remaindermen are entitled to have awarded to them jointly a 51% interest in the land, and the beneficiaries under the will of Mrs. Barbara Hildebrandt are entitled to the remaining 49%. Parker v. Seeley, 56 N.J. Eq. 110, 38 Atl. 280; McCoy v. McCloskey, 94 N.J. Eq. 60, 117 Atl. 473; Skinner v. Boyd, 98 N.J. Eq. 55, 130 Atl. 22, affirmed by Supreme Court, 100 N.J. Eq. 355, 134 Atl. 919; 4 Part 1 Bogert, Trusts and Trustees, 248, Sec. 826.

■ We are in agreement with the rule announced in the case of Parker v. Seeley, supra. In that case the court said:

"The next question arises between tenants for life and remaindermen, as to the disposition of extra profits to be realized upon real estate bought in under foreclosure of mortgages, and held by the executors. *From this source it is expected that there will be a profit, after paying expenses, restoring the principal sum, and paying all arrears of interest. It will be observed that the real estate was purchased with the funds of the estate, consisting partly of principal and partly of interest; the principal belonging to the remainder-man, and the interest to the tenant for life.* This subject was dealt with, in the case of a loss arising under such circumstances, in the case of Hagan v. Platt, 48 N.J. Eq. 206, 21 Atl. 860; and the doctrine there laid down was followed and applied * * * in Tuttle's Case, 49 N.J. Eq. 262, 24 Atl. 1. The rule so established is that in case of a loss the deficiency is to be divided between the tenant for life and remainder-man in the proportion which the principal represented by the investment bears to the interest which was in arrears, and also represented by the investment. And it seems to me that the same principle applies to the case where a profit, instead of a loss, arises."

■ It is well settled in Texas that an oil and gas lease on real property constitutes a real property interest in the nature of a determinable fee in the mineral estate, and that bonus payments made in consideration for the execution of the lease are considered a part of the corpus and not income. Mitchell v. Mitchell, 151 Texas 1, 244 S.W. 2d 803. Therefore, the money received by the Trustee in consideration for the oil and gas leases should be awarded to the respective parties in the same proportion as the land.

■ The petitioners contend that the doctrine of resulting trusts is not applicable and that the Court of Civil Appeals was in error in so holding. While it is not necessary for this Court to rest its decision on this point, we agree with the Court of Civil Appeals. As stated in 89 C.J.S. 950, Sec. 102-e, Trusts, "a resulting trust must result, if at all, the instant the title passes, and will not arise on other than the state of facts existing when the property is acquired. * * * A resulting trust arises by operation of law the instant the estate passes * * * ". It has been held that a resulting trust will be recognized where it is equitable or just to do so to prevent unjust enrichment. The Trustee in this case claims no beneficial interest in the property. It must be

presumed that when it acquired the property in its name as Trustee that it was contemplated at the time that the Trustee would hold the property in trust for the true owner. The fact that the Trustee apparently held the property under the express trust heretofore referred to does not alter the situation. Mrs. Hildebrandt's money went into the consideration for the purchase of the land, and equity, justice and fair dealing demand that her interest in the property be preserved. The very nature of the transaction whereby the Trustee used the money of the life tenant to purchase the land leads us to this conclusion. "The doctrine of resulting trusts is founded on the presumed intention of the parties; and, as a general rule, it arises where, and only where, such may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established * * * ." 89 C.J.S. 947, Sec. 102-b, Trusts. No presumption can arise under the facts before us that it was the intention of Mrs. Hildebrandt that her title should pass to the remaindermen when the deed was executed conveying the title to The San Antonio Loan & Trust Company as Trustee. The resulting trust arose in favor of Mrs. Hildebrandt the moment the deed was executed and delivered to the Trustee. When the Trustee took the land in its name it did so for the benefit of Mrs. Hildebrandt to the extent of her proportionate interest in the judgment. Since she was the equitable owner of the tract of land, the bonuses received as a result of the oil and gas leases were equitably owned by her in the same proportion.

The judgment of the Court of Civil Appeals which reversed and remanded this cause to the trial court is affirmed with instructions that the trial court require the Trustee to render and file a complete accounting of all funds received and paid out in connection with the management of the trust, all in accordance with this opinion, and that upon approval thereof, the trial court is instructed to order the Trustee to execute and deliver proper deed or deeds conveying to the remaindermen 51% of the tract of 97.7 acres and to make proper distribution to the remaindermen of all other property belonging to the estate of John B. Hildebrandt. The trial court is further instructed to order and require the trustee to execute and deliver proper deed or deeds conveying to the respondents a 49% interest in and to said 97.7 acres of land, and 49% of the bonus payments received by the Trustee, which the filed account shows to be now in the form of United States Savings Bonds, as well as all income not heretofore distributed. In all other respects the judgment of the trial court is affirmed.

All costs are adjudged against the petitioners, John F. Hildebrandt, et al, the defendants named in this suit other than the respondents, Leslie J. Hamilton, et al.

Opinion delivered July 20, 1955.

MR. JUSTICE GARWOOD dissenting.

Counsel for the trustee appeared to admit on oral argument that if a trust owns a mortgage note in default as to interest, and the debtor and trustee somehow properly settle the interest obligation by payment to the trustee of property other than money, equitable title to the property would be in the income beneficiary of the trust even before it is delivered to him. But I think this is not so, since the trustee certainly has the right to use that very item of property by way of discharging current expenses of administration, including payment of trustee fees to itself, and could also keep it and account to the income beneficiary in money for the amount of interest for which the property was given in payment. Still less, should the income beneficiary acquire an equitable fee interest in a case like the instant one, where, in the usual course of business, there is a foreclosure for default of both principal and interest, and the trustee owner of the mortgage bids in the property and later, in effect, sells the mineral part of it. In such a situation the applicable rule would seem to be that given in the Restatement, Trusts, Sec. 241, (as elaborated in the 1948 Supplement of the same work), which is one of equitable accounting based on the general right of the income beneficiary to an appropriate share of the benefits of the transaction in the light of her loss of income due to failure of the debtor to pay the interest, but not based on a pro rata fee interest of the income beneficiary in the land in question. The Restatement rule, like the rule adopted by the majority opinion here, results in giving the income beneficiary part of the proceeds of the sale, even in situations where the net results of the transaction include a large loss of corpus (e. g., principal of these notes $10,000; past due interest $1,000.00; proceeds of sale by trustee following foreclosure purchase by trustee and resale, $5,000.00). In the latter case the income beneficiary would, under the Restatement rule, get a part of the $5,000.00, being the difference between $5,000.00 and a smaller sum which, at 5% per annum or such other rate as might be established as the going rate of return on trust funds, would have produced in the period between the final sale and the earlier date when the duty of the trustee arose to take action on the note, a total of $5,000.00 (principal and interest). In the hypothetical case there

would, of course, be substantial loss of corpus (assuming the trustee had paid $10,000 for the $10,000 note or that it was worth $10,000 when the trustee acquired it from the trustor), and the income beneficiary, while receiving less than she would have gotten if the debtor had duly complied with all his obligations, nevertheless gets something. On the other hand, if in the same case the trustee should, by some lucky chance, realize not $5,000.00, but $50,000.00 out of the foreclosure-acquired land, the same formula would be applied, the corpus thus being substantially increased over the principal amount of the note or its lower actual value, and the income beneficiary likewise receiving substantially more than she would have received if there had never been any default on the note, but, in the instant case, somewhat less than she receives under the theory of joint ownership of the property received in foreclosure.

True, the instant case is not specifically covered in the portion of the Restatement referred to, the novel features here involved being, (a) the fact that the trustee took over the land more or less in discharge of a judgment for specified amounts of both principal and interest and, (b) the further fact that the trustee still owns the surface and the reversion of the minerals after receiving two cash bonus payments for the latter. Moreover, considering the long period of time between the apparent date of first default on the note and the date the trustee began to make recoveries from the property, there might well be no great difference in actual values between the division of funds based on the theory of joint ownership of the land after the foreclosure and a division based on the rule of the Restatement. At the same time, the latter rule, like that of Willis v. Holcomb, 83 Ohio State 254, 94 N.E. 486, is inconsistent with ownership by the income beneficiary of a fee interest in the land. As seems to be the thought of the dissenting justice in the Court of Civil Appeals, the idea of resulting trusts within express trusts is quite novel, and I apprehend some unnecessary confusion in the law from a precedent giving an income beneficiary an equitable fee interest when the trustee forecloses and bids in the property under a judgment for both principal and interest, especially when we do not clearly specify the determining factor for this result. Is the latter the fact that there was no personal judgment taken against the debtor or that the judgment specified both principal and interest as making up the total debt foreclosed upon, or both? Are we holding that in every case of a foreclosure involving both principal and interest, if the trustee himself bids in the property, the income beneficiary automatically acquires a pro rata equitable fee interest therein, so that the trustee

must give a deed to the income beneficiary of her interest or else set up a second and different trust on the books in her favor? If the debtor be insolvent, what practical difference is there between taking merely the security and taking the latter plus a worthless deficiency judgment?

No doubt it will be somewhat complicated to apply the Institute rule to the instant case involving two bonus payments, and with the trustee still holding legal title to the surface and mineral reversion. But it could be worked out, and, as stated, the result would include an equitable participation of the income beneficiary in the bonus money from the mineral leases and any other increase that has accrued to the land, although probably on a somewhat more modest basis than if we adjudicated to her a fee interest in the property taken in foreclosure.

Delivered July 20, 1955.

Rehearing overruled Nov. 9, 1955.