The **ESTATE OF J. Mit LEE**, Appellant,

v.

**R.L. RING**, Appellee.

No. 01–87–00055–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 25, 1987.

Rehearing Denied July 30, 1987.

John E. Hawtrey, Bryan, for appellant.

Michael T. Trefny, Lehmann & Associates, Houston, for appellee.

Before EVANS, C.J., and COHEN and HOYT, JJ.

## OPINION

HOYT, Justice.

This is an appeal from a take-nothing judgment entered by the trial court in a suit to "quiet title" brought by the appellant, administratrix of the Estate of J. Mit Lee, against the appellee, R.L. Ring.

Trial testimony showed that J. Mit Lee and R.L. Ring had known each other for several years before the property conveyance made the subject of this suit. Lee rented cars from Ring's leasing company for himself and several associates. By 1971, Lee was substantially indebted to Ring's company and offered to have the owner of the subdivision where he worked transfer certain lots to Ring in payment of his lease-debt. Lee was to have acquired ownership to various lots as compensation for his service in selling the remaining property. On September 14, 1971, the developer signed a deed prepared by Lee conveying 26 lots to Ring, and on September 16, Lee gave the deed to Ring with a cover letter asking that he (Lee) be released from the debt that he owed on the leased cars. Ring accepted the deed in satisfaction of the debt, although their debtor-creditor relationship continued for some time thereafter. Both Ring and the developer testified that at the time of the conveyance, they did not consider the lots to be of much value; Ring did not bother to record the deed until 1978, shortly before Lee's death. After Lee died, his wife, as the administratrix of his estate, brought suit to set aside the deed, alleging, among other things, fraudulent conveyance, alter ego, and that the property was simply mortgaged to secure the prior debt.

In five points of error, the appellant contends that "[t]he trial court erred in concluding, as a matter of law, that full equitable title was conveyed ... to Ring on September 14, 1971," because: (1) a resulting trust arose on that date wherein Lee, who provided the consideration for the transfer, was beneficiary and Ring, who provided nothing and knew nothing of the transfer, was trustee of the property; (2) a constructive trust arose on September 16, 1971, in the remainder of the property interests after the lease indebtedness is subtracted from the property's value; (3) the letter that accompanied the September 16, 1971 deed delivery, required Ring to prove his affirmative defense of payment of debt to overcome the presumption that the lots were merely mortgaged; (4) Ring failed to raise the defense that the lots were in payment of a debt as a counterclaim; and (5) Lee's actions were not barred by the four- and five-year statutes of limitations.

The gravamen of the appellant's argument centers on the interpretation of several letters written by Lee to Ring beginning

April 10, 1971. On that date, Lee wrote to Ring:

> Dear Bob:
>
> Converting to writing our verbal agreement relative to settlement on the Sub-division [sic] in Burleson County, Texas I agree as follows bound by an agreement with the owners of the Tonkawa Hills development that the following will be delivered to you.
>
> \*   \*   \*   \*   \*   \*

On April 27, 1971, Lee again wrote to Ring as follows:

> Dear Bob:
>
> Previously in a letter to you I agreed to deed you 26 lots in Yegua Hills Subdivision Burleson County, Texas.
>
> In addition I agree and will deed you one more lot in the same addition making a total of 27 lots that will be deeded to you. Henry advised me yesterday that he was sure that he had the money tied down and is in Houston today to complete the transaction. I will advise you as to results that Clay had tomorrow.
>
> \*   \*   \*   \*   \*   \*

On September 16, 1971, when the deed was delivered to Ring, it was accompanied by a letter which read, in pertinent part, as follows:

> Dear Bob:
>
> I am enclosing deed from Resort and Recreational Properties Company to you covering 26 Lots out of Yegua Hills Subdivision in Burleson County, Texas. This is in keeping with what I promised you I would do. I also promised an additional lot for an accommodation which I will deliver as soon as Culpepper deeds it to me.... I did not have these lots deeded to me because I have these judgements [sic] and possibly could mess things up. I value them for the purpose that I am using them at $1000.00 each or Twenty Six Thousand Dollars—$26,000.00. With a litt [sic] fixing they will sell for $1800.00 or $2000.00 each, or gross $52,-000.00 or $46,800.00. Out of this I want to be released from all of the indebtidness [sic] on all of those lease cars. The Pontiac will not be included in this....

Finally, on November 11, 1972, almost 14 months after he had given the deed to Ring, Lee wrote the following:

> Dear Bob:
>
> You advanced me $1200.00 on my trailer and I asked that you pay off the balance on the Pontiac and an additional $375.00 that I owed you. *Earlier I sent you a deed on the lots (26) in Yegua Hills, Burleson County, Texas to cover any amount due you on leased cars that Mc Clelland and Acre had. I thought that this was understood that I was doing this acting in good faith and to pay you mones [sic] that I owed you or was responsible for.*

(Emphasis supplied.)

On appeal, the appellant directs our attention to Lee's September 16th correspondence where he valued the lots at $1,000 each, stated that he was to keep his car, "the Pontiac," and that "out of this" he wanted to be released from all of the indebtedness on the lease cars. The appellant contends that the "out of this" clause in the transmittal letter established that Lee intended that the value of the lots exceed the debt and that the difference or remainder created equitable title in Lee. Furthermore, the appellant contends that to allow Ring to keep the difference would be unjust enrichment.

■ A resulting trust is implied in law when someone, other than the person in whose name title is taken, pays the purchase price, or when an express trust fails. *Nolana Development Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984); G. Bogert, *The Law of Trusts & Trustees* § 451 (rev. 2d ed. 1977). The intent of the person who seeks to have beneficial title vested in him or her must be determined from the facts and circumstances existing at the time of the transaction out of which the resulting trust is sought to be established. *San Antonio Loan & Trust Co. v. Hamilton*, 155 Tex. 52, 283 S.W.2d 19, 27 (1955). In *Hamilton*, the court stated that:

> A resulting trust must result, if at all, the instant the title passes, and will not arise on other than the state of fact existing when the property is ac-

quired.... A resulting trust arises by operation of law the instant the estate passes.... The doctrine of resulting trusts is founded on the presumed intention of the parties; and, as a general rule, it arises where, and only where, such may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established....

*Id; see also Uriarte v. Petro,* 606 S.W.2d 22 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

In points of error one and two, the appellant contends that the trial court erred as a matter of law in not finding a resulting trust and a constructive trust. Thus, appellant is attacking the trial court's adverse findings on the matters that *she clearly had the burden of proof.* In this regard, we would have to conclude that there was no evidence to support the trial court's findings and conclusions. If there is some evidence upon which the findings and conclusions could be based, the appellant has failed to sustain her burden of establishing, as a matter of law, the contrary of the trial court's findings and conclusions. *See Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982).

We conclude, from the record, that there was some evidence upon which the trial court's finding of facts and conclusions of law are based, and that the trial court applied the correct law to the facts of this case. Lee's intentions are adequately expressed in his letters where he stated that he was exchanging the 26 lots for his past debts on the lease vehicles. We overrule point of error one.

We also overrule point of error two for the reasons stated above, and also because there is no evidence showing: (1) that at the time of the delivery of the deed, the value of the 26 lots substantially exceeded Lee's debt with Ring, or that a fiduciary relationship existed between them, *see Hamblet v. Coveney,* 714 S.W.2d 126, 131 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); or (2) that Ring

concocted a scheme to defraud Lee of the alleged residual value of the lots.

Proof of reliance upon a misrepresentation is essential to an allegation of fraud, *Galaznik v. Galaznik,* 685 S.W.2d 379, 385 (Tex.App.—San Antonio 1984, no writ), and the burden of proof in each of these instances rests upon the party asserting fraud.

The appellant's third, fourth, and fifth points of error are asserted as a bar to Ring's defense that a debt was the basis of the property transfer. These points of error assume that this Court agrees with the appellant's assertion that a resulting trust occurred upon delivery of the 26 lots and that a constructive trust was created after the transfer occurred because of fraud or because Ring breached a fiduciary duty owed to Lee. On the premise that these two issues were established, the appellant asserts that the underlying debt is no longer collectible because of the statute of limitations and because of Ring's failure to affirmatively plead for the money debt.

Based on our resolution of points of error one and two, it becomes unnecessary for us to address the merits of points of error three, four, and five.

The judgment of the trial court is affirmed.